2008 ND 72

**Suellen BATEMAN, Appellant**

v.

**CITY OF GRAND FORKS, Appellee.**

No. 20070217.

Supreme Court of North Dakota.

April 17, 2008.

Beth Angus Baumstark (argued), and Derrick L. Braaten (appeared), Sarah Vogel Law Firm, P.C., Bismarck, N.D., for appellant.

Howard D. Swanson, City Attorney, Grand Forks, N.D., for appellee.

SANDSTROM, Justice.

[¶ 1] Suellen Bateman appeals from a district court judgment affirming a flood-control special assessment levied against her property. We conclude the district court did not err in concluding that the Special Assessment Commission did not abuse its discretion in apportioning the assessments and that the assessment on Bateman's property was not arbitrary, capricious, or unreasonable. We affirm.

I

[¶ 2] In 1997, the city of Grand Forks suffered from a devastating flood, which caused millions of dollars in damage to private and public property. As a result, a massive permanent flood protection project was devised, which included flood levees, flood walls, tieback levees, pumping facilities, storm water improvements, retention ponds, gated pipes, outfall structures, and modification and extension of the English Coulee diversion channel. The goal of the project was to reduce direct flooding from the Red River of the

North, to reduce backup flooding into the English Coulee from the Red River, to reduce flooding from the English Coulee, and to reduce overland flooding. Part of the financing for the project came from special assessments imposed on properties that benefit from the project. The assessments occurred in three rounds, with the first assessment in 2001, the second in 2003, and the third in 2006. The 2006 assessments were levied against property recently annexed to the city of Grand Forks within the special assessment district that had not previously been assessed.

[¶ 3] For all three rounds of assessments, the Special Assessment Commission calculated the benefits and special assessments using the effective front footage for residential properties and square footage for non-residential properties. The Special Assessment Commission found that 32 percent of the area of the city is residential in nature and 68 percent is non-residential in nature. The Special Assessment Commission found the front footage formula reasonably approximates the usable space of residential properties and the square footage reasonably approximates the usable space of non-residential properties. The Special Assessment Commission considered other assessment methods, including assessments based on property elevation, property value, distance from the river, type or style of construction presently existing on a property, whether a property was currently in the one-hundred-year floodplain, whether a property had structures damaged in the 1997 flood, and square footage of existing buildings, but concluded those methods did not accurately quantify the benefit received from the enhanced flood protection. The Special Assessment Commission reduced the area assessed on undeveloped agricultural property by 30 percent because it concluded that would be the approximate area

necessary to accommodate future platting of public right-of-way for streets, infrastructure, and utilities, and therefore should be excluded from the square footage calculation of benefit. The Special Assessment Commission also reduced cemetery assessments and the assessments on certain properties near or adjacent to the English Coulee because it concluded those properties receive a reduced benefit from the project.

[¶ 4] On June 19, 2006, the Grand Forks City Council approved the recommendation of the Special Assessment Commission to assess all newly annexed properties located within the assessment district. The Special Assessment Commission determined benefits and assessments for the newly annexed properties and created a list of the benefits and proposed assessments for each property. Notice of the proposed assessments and a public hearing to consider objections was published in the local newspaper on September 9 and 16, 2006.

[¶ 5] Bateman owns non-residential, agricultural land within the city limits of Grand Forks, west of Interstate 29, and within the boundaries of the city's flood protection system. A portion of the property, consisting of approximately 1.28 acres, was annexed in 2003. Other portions of the property were already within city limits and had been assessed in 2001 and 2003 for the flood protection project. In August 2006, the Special Assessment Commission sent Bateman written notice that on the basis of the property's area, the recently annexed portion of her property would be assessed $4,195.61 for the flood protection project. Bateman's property received a 30 percent reduction in the area assessed because the property is undeveloped agricultural land. The property is in an area that was previously identified as a future assessment area for the flood

protection project, but had not been assessed in 2001 or 2003 because it was not within the city limits.

[¶ 6] On September 27, 2006, the Special Assessment Commission held a public hearing to consider protests and objections. Bateman appeared at the hearing and protested the assessment, questioning why her property would be assessed since it is located four miles from the river and did not benefit from the flood protection project. The Special Assessment Commission rejected Bateman's protest and approved the assessment without modification. Bateman received written notice that the Special Assessment Commission did not modify the proposed assessment and that she could protest the assessment at a City Council meeting on October 16, 2006. Notice of the confirmation of the special assessments was published in the newspaper.

[¶ 7] In October 2006, Bateman sent the City a written appeal objecting to the Special Assessment Commission's actions. The City Council considered Bateman's objections to the assessment at an October 16, 2006, City Council meeting, and Bateman appeared at the meeting with her attorney to protest the assessment. Bateman argued her property should not be assessed because her property does not receive a special benefit from the project, and she objected to the procedure the City used to annex and assess her property. The City Council denied Bateman's protests and certified the assessment. On November 6, 2006, the City Council adopted written findings about Bateman's protest.

[¶ 8] Bateman appealed the decision to the district court. The court ruled the City complied with state law by calculating the benefit each parcel of land receives; the Special Assessment Commission's decision to specially assess Bateman's land was not arbitrary, capricious, or unreasonable, because the property is especially benefitted by the project; and Bateman failed to demonstrate the Special Assessment Commission acted arbitrarily, capriciously, or unreasonably in apportioning the special assessments. The court affirmed the City Council's decision and entered judgment for the City.

[¶ 9] The district court had subject matter jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 40–26–01. The plaintiff's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28–27–01 and 40–26–01.

## II

[¶ 10] This Court's review of a decision about special assessments is limited partially because of the separation of powers doctrine:

The special assessment commission is in essence a legislative tribunal created by legislative authority to "(1) determin[e] the benefits accruing to the several tracts of land in an improvement district by reason of the construction of an improvement and (2) assess[ ] the costs and expenses thereof against each tract in proportion to the benefit received." Accordingly, judicial review is limited to assuring that local taxing authorities do not act arbitrarily, capriciously, or unreasonably. Courts are not to act as a super grievance board, and we do not try special assessment cases anew or reweigh the evidence. Rather, we begin with the presumption that assessments for local improvements are valid, and the burden is on the party challenging the validity of the assessments to demonstrate they are invalid.

*Serenko v. City of Wilton*, 1999 ND 88, ¶ 20, 593 N.W.2d 368 (citations omitted).

[¶ 11]   Section 40–23–07, N.D.C.C., provides the statutory requirements that must be followed in deciding benefits and apportioning assessments:

> Whenever the commission makes any special assessment, the commission shall determine the particular lots and parcels of land which, in the opinion of the commission, will be especially benefited by the construction of the work for which the assessment is to be made. The commission shall determine the amount in which each of the lots and parcels of land will be especially benefited by the construction of the work for which such special assessment is to be made, and shall assess against each of such lots and parcels of land such sum, not exceeding the benefits, as shall be necessary to pay its just proportion of the total cost of such work, or of the part thereof which is to be paid by special assessment, including all expenses incurred in making such assessment and publishing necessary notices with reference thereto and the per diem of the commission.

This Court has said there are three requirements that must be met for a special assessment to conform to N.D.C.C. § 40–23–07:

> "The special benefit accruing to each lot or parcel of land from the improvement must be determined. The special assessment levied against each lot must be limited to its just proportion of the total cost of the improvement. The assessment against any lot or parcel of land must not exceed the benefit which has been determined to have accrued thereto."

*Cloverdale Foods Co. v. City of Mandan,* 364 N.W.2d 56, 61 (N.D.1985) (quoting *Northern Pacific R.R. v. City of Grand Forks,* 73 N.W.2d 348, 351 (N.D.1955)).

A

[¶ 12]   Bateman argues the City acted arbitrarily, capriciously, and unreasonably in basing the cost of the assessment on the combined cost of the English Coulee Diversion and the construction of the dike. Relying on *Cloverdale,* 364 N.W.2d 56, she argues it is not necessarily improper to combine the two projects for purposes of creating a special assessment improvement district, but contends a property within the improvement district can only be assessed on the basis of the cost of the portion of the project from which it actually receives a benefit. Bateman claims her property does not receive a benefit from the construction of the dike along the Red River and the only benefit it does receive is from the diversion of the English Coulee. She claims the amount of her assessment would be less if she were assessed only for the English Coulee project, and the amount of her assessment far exceeds the minimal benefit she receives from the English Coulee project.

[¶ 13]   In *Cloverdale,* 364 N.W.2d at 57, the city of Mandan created an improvement district for the purpose of constructing an interceptor sewer and improving the city's waste-water lagoon facility. The interceptor sewer served only a portion of the city, but the waste-water lagoon facility treated water from the entire city. *Id.* at 58. The city created one improvement district, but each property within the district was assessed for each project separately depending on whether it received a benefit from only the waste-water lagoon or also from the interceptor sewer. *Id.* Cloverdale argued the special assessment commission acted arbitrarily and unreasonably in using an impermissible method to determine benefits and to apportion assessments for the improvements. *Id.* at 59. This Court upheld the assessments, concluding the method used to calculate benefits had a relationship to the improve-

ments, Cloverdale received a special benefit from the improvements, Cloverdale's assessment was justly proportional to the cost of the improvements, and Cloverdale's assessment did not exceed the benefits it received. *Id.* at 62.

[¶ 14] While this Court affirmed the city of Mandan's decision to split the cost of the two projects within the entire sewer improvement and to assess each property on the basis of the benefit it receives from each project, we did not say this was the only way a city could assess properties for an improvement involving more than one project. Here, multiple individual projects collectively form the overall flood protection improvement and are necessary to accomplish the overall goal of protecting the city from flooding. The effectiveness of the flood protection improvement would be reduced if any of the individual projects were not completed. The English Coulee Diversion is only one component of the overall flood protection project, and it is not a separate improvement that must be assessed separately. Moreover, multiple related projects may be included in a single improvement and the total cost of the improvement may be divided and assessed to all properties that receive a special benefit from the improvement, so long as the assessment is not more than the special benefit the property receives. *See, e.g., Village of South Jacksonville v. Emberton,* 52 Ill.App.2d 90, 201 N.E.2d 545, 547 (1964); *Crampton v. City of Royal Oak,* 362 Mich. 503, 108 N.W.2d 16, 20 (1961); *Bisbee v. City of Fairmont,* 593 N.W.2d 714, 719 (Minn.Ct.App.1999); *Quality Homes, Inc. v. Village of New Brighton,* 289 Minn. 274, 183 N.W.2d 555, 561–62 (1971). We conclude the Special Assessment Commission did not act arbitrarily, capriciously, or unreasonably in assessing properties within the improvement district on the basis of the total cost of the flood protection project.

## B

[¶ 15] Bateman argues the City arbitrarily decided the benefits and apportioned the assessments for each property. She claims the City incorrectly found each square foot of property receives the same benefit from the improvements and, therefore, assessed each square foot of non-residential property at the same rate. She claims it is arbitrary to conclude all non-residential properties within the city benefit equally from the project and thus should be assessed equally, because properties closer to the river and those at lower elevations will receive greater benefits. She argues the City arbitrarily used the same rate for the assessment of all non-residential land without looking at the difference in the benefits received. Instead, Bateman asserts that to decide the benefits her land receives from the project, the City should have looked at whether the land was developed, how it is currently used, its distance from the river, and whether a prior requirement for flood insurance has been eliminated.

[¶ 16] A special assessment commission's broad discretion includes choosing the method used to decide benefits and apportioning costs to individual properties. *Serenko,* 1999 ND 88, ¶ 21, 593 N.W.2d 368. The assessments levied against property must be limited to a "just proportion," but "the process of quantifying benefits accruing to each lot inevitably rests on the judgment and discretion of the special assessment commission." *Haman v. City of Surrey,* 418 N.W.2d 605, 608 (N.D.1988). There is no precise formula for quantifying benefits. *Id.* "[A]n 'assessment may be apportioned according to frontage, area, value of, or estimated benefits to, the property assessed, or ac-

cording to districts or zones, or on any other reasonable basis that is fair, just, and equitable.'" *Serenko*, at ¶ 21 (quoting *Cloverdale*, 364 N.W.2d at 61). The method used to apportion the assessment cannot be arbitrary and must have some relation to the benefits. *Cloverdale*, 364 N.W.2d at 61. A city may adopt any mode of apportionment that is fair and legal and would secure an assessment in proportion to the benefits accruing as nearly as practicable, if there is no statute prescribing the method to use. *Id.* "'[I]t is the total work product which was used in determining the final assessment which is important, rather than the exact method used in determining the assessment.'" *Id.* (quoting *United Pub. Sch. Dist. No. 7 v. City of Burlington*, 196 N.W.2d 65, 69 (N.D.1972)).

▇▇ [¶ 17] Here, the Special Assessment Commission concluded that all property within the improvement district benefits from the flood protection project and that using the square footage of non-residential properties was the best method to apportion the assessments on the basis of the benefits each non-residential property receives from the flood protection project. We have upheld assessments based on square footage in the past. *See Serenko*, 1999 ND 88, ¶ 23, 593 N.W.2d 368. The Special Assessment Commission considered other methods to apportion the assessments but found those methods did not accurately quantify the amount of benefit each property receives from the enhanced flood protection. While the Special Assessment Commission assessed each square foot of non-residential property at the same rate, except agricultural property and cemeteries which receive reduced assessments, the Special Assessment Commission did not find all properties receive the same benefit. Rather, the assessments and benefits were based on the size of the property, and the Special Assess-

ment Commission decided there was a relationship between the size of the property and the benefit it receives. The Special Assessment Commission has discretion to choose the method to decide benefits and apportion assessments, and it was not required to limit the assessments on the basis of a property's current use and the benefits it currently receives from the improvement. *See Haman*, 418 N.W.2d at 608.

[¶ 18] We conclude the Special Assessment Commission properly exercised its discretion in choosing the method of assessment, the method used was not arbitrary, and substantial evidence supports the decision.

C

[¶ 19] Bateman claims the City acted arbitrarily, capriciously, and unreasonably in deciding the special benefits her property receives from the flood protection project. She contends her property does not receive any special benefits from the flood protection project, and therefore the assessment constitutes an unconstitutional taking.

▇▇ [¶ 20] "'[T]he process of quantifying benefits accruing to each lot inevitably rests on the judgment and discretion of the special assessment commission.'" *Farmers Union Cent. Exch., Inc. v. Grand Forks County*, 443 N.W.2d 907, 910 (N.D. 1989) (quoting *Haman*, 418 N.W.2d at 608). The special assessment commission has the discretion to determine benefits and to apportion assessments, but that discretion is limited by the requirement that an assessment cannot exceed the benefits the land receives from the improvement. *Cloverdale*, 364 N.W.2d at 60. When an assessment exceeds the benefits to the property assessed, the excess is a taking of property without due process of law. *Id.* at 61.

[¶ 21] The City Council found the flood protection project provides many benefits, including: preserving and protecting life, property, public health, and public welfare through enhanced protection from flooding of the Red River, backup into the English Coulee, flooding of the English Coulee, and protection from overland flooding; enhancing storm water facilities; reducing costs and effects of cleanup following flood events; enhancing potential development; preventing damage to and the disruption of private commerce; preventing damage and disruption of public services, utilities, facilities, communications, transportation, law enforcement, fire protection, health, potable water, garbage collection, and sewer services; reducing the cost of temporary flood protection; reducing the number of homes required to carry flood insurance; and preventing flooding of undeveloped land, which increases the potential for development.

[¶ 22] While those are general benefits most of the City enjoys, including Bateman, the City Council also found the flood protection project would specifically benefit Bateman's property because the English Coulee Diversion project will control, reduce, or eliminate damage from overland flooding, which will enhance and/or promote commercial development of the property and will reduce or eliminate overland flooding that may harm or destroy crops, affect the manner of timing of agricultural operations, and affect access to or from the property. The City Council found Bateman's property is adjacent to newly developed non-residential developments and is in an area with great potential for commercial development in the near future. The City Council also found the benefits to Bateman's property exceed the assessment, and the Special Assessment Commission found Bateman's prop-

erty receives benefits of $5,244.51 and assessed the property $4,195.61.

[¶ 23] In prior cases, this Court has said that whether a property benefits from an improvement does not depend only on the property's present use; rather, possible future uses may also be considered:

"It is natural for the average property owner to resent the burden thus laid upon him, and he easily persuades himself that the thing for which he is asked to pay is a detriment, rather than a benefit, to his land, and ordinarily it is not difficult for him to find plenty of sympathizing neighbors who will unite in supporting his contention. Indeed, the benefits to be derived in such cases are ordinarily not instant upon the inception or completion of the improvement, but materialize with the developments of the future. They are none the less benefits because their full fruition is postponed, or because the present use to which the property is devoted is not of a character to be materially affected by the improvement."

*Haman*, 418 N.W.2d at 608 (quoting *Soo Line R.R. v. City of Wilton*, 172 N.W.2d 74, 83 (N.D.1969)).

[¶ 24] Bateman's property is in a developing area, and the City Council found there was great potential for future commercial development in the area. The City Council also found Bateman's property receives immediate benefits from the flood protection project because the project will reduce or eliminate flooding that may affect or harm agricultural operations. There was evidence the property is in an area that has been prone to flooding in the past, but since the English Coulee Diversion has been in place, there have not been any flooding problems. While Bateman may plan to continue farming the land for the foreseeable future and the property may not currently utilize the full benefit of the flood protection, the evidence supports

the City Council's findings that Bateman's property receives a special benefit from the flood protection project and that the benefits exceed the assessment.

### D

[¶ 25] We conclude the special assessments conform to N.D.C.C. § 40–23–07, Bateman's property receives a special benefit from the flood protection project, the assessment levied against Bateman's property is limited to its just proportion of the total cost of the improvements, and the assessment does not exceed the special benefits Bateman's property receives. Bateman has failed to meet her burden of showing the Special Assessment Commission acted arbitrarily, capriciously, or unreasonably.

### III

[¶ 26] We conclude the special assessment against Bateman's property was not arbitrary, capricious, or unreasonable, and we affirm the district court judgment.

[¶ 27] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.