2012 ND 149

**D & P TERMINAL, INC.; Potter Enterprises; and William F. Rakowski, Petitioners**

**D & P Terminal, Inc.; Potter Enterprises, Appellants**

**v.**

**City of Fargo, a political subdivision of the State of North Dakota, Respondent and Appellee.**

No. 20110194.

Supreme Court of North Dakota.

July 18, 2012.

Rehearing Denied Aug. 20, 2012.

Jonathan T. Garaas, DeMores Office Park, Fargo, N.D., for petitioners and appellants.

Jane L. Dynes (argued) and Ronald H. McLean (on brief), Fargo, N.D., for respondent and appellee.

CROTHERS, Justice.

[¶ 1] D & P Terminal, Inc., and Potter Enterprises appeal from a district court judgment affirming the decision of the Board of City Commissioners of Fargo ("the Board") approving special assessments against their property. We affirm, concluding the Fargo Special Assessment Commission ("the Commission") did not use an inappropriate method to calculate

the benefits to property included in the improvement district.

## I

[¶ 2] Twelfth Avenue North is a major arterial street in Fargo. D & P Terminal, Inc., and Potter Enterprises own property abutting 12th Avenue North. The North Dakota Department of Transportation and the City of Fargo planned a major reconstruction of 12th Avenue North, including paving, replacing water mains and sanitary sewers, installing additional storm sewers, installing street lights and widening the bridge deck on the 12th Avenue viaduct. The Board adopted a resolution creating Improvement District 5547, which authorized improvements to a two-mile stretch of 12th Avenue North. Neither D & P nor Potter filed an objection to creation of the improvement district, although they had notice of the Board's contemplated action.

[¶ 3] Upon completion of the project, D & P and Potter received notice of the assessments to their respective properties. D & P and Potter filed objections to the assessments, and their objections were considered at a series of public meetings before the Commission.[1] The Commission ultimately certified the final assessment list, which was then sent to the Board for final approval. The Board held a public hearing on the assessments, and D & P and Potter filed objections and presented arguments at the public hearing. The Board approved the final assessments.

[¶ 4] D & P and Potter appealed the Board's decision approving the final assessments to the district court. The district court concluded the action of the Board had not violated due process and had not been shown to be arbitrary, capricious, unreasonable or not supported by

the law. Judgment was entered affirming the decision of the Board, and D & P and Potter appealed.

## II

[¶ 5] We have summarized the standard of review we apply to a decision approving special assessments:

"Our review of a decision on special assessments is very limited:

'The special assessment commission is in essence a legislative tribunal created by legislative authority to "(1) determin[e] the benefits accruing to the several tracts of land in an improvement district by reason of the construction of an improvement and (2) assess[ ] the costs and expenses thereof against each tract in proportion to the benefit received." Accordingly, judicial review is limited to assuring that local taxing authorities do not act arbitrarily, capriciously, or unreasonably. Courts are not to act as a super grievance board, and we do not try special assessment cases anew or reweigh the evidence. Rather, we begin with the presumption that assessments for local improvements are valid, and the burden is on the party challenging the validity of the assessments to demonstrate they are invalid.'

*Bateman v. City of Grand Forks,* 2008 ND 72, ¶ 10, 747 N.W.2d 117 (quoting *Serenko v. City of Wilton,* 1999 ND 88, ¶ 20, 593 N.W.2d 368 (citations omitted)). We must affirm the decision of a local governing body unless it acted arbitrarily, capriciously, or unreasonably, or there is not substantial evidence supporting the decision. A decision is not

---

1. William Rakowski, another landowner in the improvement district, also filed objections and participated in this case in the district court. He has since sold his affected property and is not involved in this appeal.

arbitrary, capricious, or unreasonable if the exercise of discretion is the product of a rational mental process by which the facts and the law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation. The record is adequate to support a local governing body's findings and conclusions if it allows us to discern the rationale for the decision. A local governing body's failure to correctly interpret and apply controlling law constitutes arbitrary, capricious, and unreasonable conduct."

*Hector v. City of Fargo*, 2010 ND 168, ¶ 5, 788 N.W.2d 354 (citations omitted).

### III

█ [¶ 6] D & P and Potter contend that use of a "formula" to determine benefits to property within an improvement district is barred by this Court's decision in *Robertson Lumber Co. v. City of Grand Forks*, 27 N.D. 556, 147 N.W. 249 (1914), and that the Commission was therefore prohibited from using Fargo's Infrastructure Funding Policy to determine benefits to D & P's and Potter's properties.

[¶ 7] The Commission's determination of the amount assessed to each property within an improvement district is governed by N.D.C.C. § 40-23-07, which provides in part:

"Whenever the commission makes any special assessment, the commission shall determine the particular lots and parcels of land which, in the opinion of the commission, will be especially benefited by the construction of the work for which the assessment is to be made. The commission shall determine the amount in which each of the lots and parcels of land will be especially benefited by the construction of the work for which such special assessment is to be made, and shall assess against each of such lots and parcels of land such sum, not exceeding the benefits, as is necessary to pay its just proportion of the total cost of such work, or of the part thereof which is to be paid by special assessment, including all expenses incurred in making such assessment and publishing necessary notices with reference thereto and the per diem of the commission."

[¶ 8] The Board has adopted an Infrastructure Funding Policy in an attempt "to make assessments for similar projects uniform throughout the city." *Hector v. City of Fargo*, 2012 ND 80, ¶¶ 5, 44, 815 N.W.2d 240. The Policy sets "caps," or maximums, which may be assessed for various listed items within certain types of improvement projects. *Id.* These caps are generally based upon front footage or square footage of the assessed property, and the suggested benefit amount is generally less than the actual cost of the improvements. *Id.* City staff members use the Policy to make a recommendation to the Commission on the estimated benefits and assessments for each property within the improvement district, which the Commission uses as a guide in making its final decision. *Id.* at ¶¶ 5, 44–45.

[¶ 9] D & P and Potter contend that, under *Robertson*, the Commission must separately determine the benefits to each individual property to be assessed within the improvement district and is prohibited from determining benefits by using a formula based upon front footage or square footage. We expressly rejected identical arguments in *Hector*:

"Hector contends the Special Assessment Commission failed to follow the statutorily mandated process requiring special assessments to be based on the benefit to the property and instead used its Infrastructure Funding Policy, which is a legislatively adopted formula. He claims the Special Assessment Commis-

sion first calculated the 'capped' costs using the formula and based the assessment on that calculation without determining the benefit to the property. He also claims the Special Assessment Commission improperly based the assessment for some property on front footage and for other property on square footage.

. . . .

"A municipality has broad discretion to choose the method used to decide what benefits a property receives from an improvement and to apportion the costs to individual properties. *Bateman*, 2008 ND 72, ¶ 16, 747 N.W.2d 117. A municipality may adopt any method to apportion benefits that is fair and legal and secures an assessment that is in proportion to the benefits as nearly as possible when no rule of apportionment prescribed by statute or charter exists. *Serenko v. City of Wilton*, 1999 ND 88, ¶ 21, 593 N.W.2d 368. " '[T]he process of quantifying benefits accruing to each lot inevitably rests on the judgment and discretion of the special assessment commission. There simply is no precise formula for quantifying benefits.' " *Id.* (quoting *Haman v. City of Surrey*, 418 N.W.2d 605, 608 (N.D.1988)). Assessments may be apportioned according to " 'frontage, area, value of, or estimated benefits to, the property assessed, or according to districts or zones, or on any other reasonable basis that is fair, just, and equitable.' " *Serenko*, at ¶ 21 (quoting 63 C.J.S. *Municipal Corporations* § 1423, at 1212; now at 64 C.J.S. *Municipal Corporations* § 1618, at 356–57 (2011)). However, '[t]he method used to apportion the assessment cannot be arbitrary and must have some relation to the benefits.' *Bateman*, at ¶ 16. The assessment to an individual property cannot exceed the benefits the property receives from the improvement. *Id.* at ¶ 20.

"In this case, the Fargo Infrastructure Funding Policy was used to estimate the benefits and amounts to specially assess for the improvement project. The Special Assessment Commission subsequently approved assessments that were generated under the policy. The Infrastructure Funding Policy was adopted to make assessments for similar projects uniform throughout the city. Fargo claims the policy 'caps' the amounts that are specially assessed against a property for certain improvements by using a formula to determine the benefit a property receives for various projects based on front footage or square footage. The policy is used by city staff to suggest to the Special Assessment Commission the amount that should be assessed against a property. The City states property owners are not assessed more than the amount calculated. The City also argues the formula does not consider the actual cost of the improvements and the benefit calculated is generally less than the actual cost.

"We generally have upheld assessments based on a formula to determine the benefit a property receives from the improvement and the amount to assess. *See Serenko*, 1999 ND 88, ¶¶ 22–23, 593 N.W.2d 368 (benefits were determined and costs were apportioned based on square footage of the lots). In this case, the Special Assessment Commission complied with the statutory requirements and determined the benefit each property received for the improvements albeit using the policy as a guide. Although Hector argues the Special Assessment Commission improperly assessed some properties based on square footage and others on front footage, we

have upheld similar assessment methods in prior cases. *See Bateman*, 2008 ND 72, ¶ 3, 747 N.W.2d 117 (benefits and assessments were calculated using front footage for residential properties and square footage for non-residential properties).

"We conclude the Special Assessment Commission did not abuse its discretion in choosing the method of assessment, the Special Assessment Commission determined the benefit to each property from the improvements and the method used for determining the special assessments was not arbitrary, capricious, or unreasonable."

*Hector*, 2012 ND 80, ¶¶ 40, 43–46, 815 N.W.2d 240.

[¶ 10] We adhere to our holding in *Hector* and reject D & P's and Potter's argument that the Commission failed to properly determine the benefits of the improvements to their properties by employing a formula assessing benefits on the basis of front footage. We write further merely to clarify that this Court's holding in *Robertson* does not require a different result.

[¶ 11] The Court in *Robertson* considered the application of § 2801 of the 1905 Revised Codes of North Dakota, which provided in part:

"It shall be the duty of [the special assessment] commission, whenever required under the provisions of this article to make any special assessment, to personally inspect any and all lots and parcels of land which may be subject to such special assessment and determine from such inspection the particular lots and parcels of land which will, in the opinion of such commission, be especially benefited by the construction of the work for which such assessment is to be made, and thereupon determine the amount in which each of said lots and parcels of land will be especially benefited by the construction of the work for which such special assessment is to be made, and thereupon assess against each of such lots and parcels of land, such sum, not exceeding such benefits, as shall be necessary to pay its just proportion of the total cost of such work, or such part thereof as is to be paid by special assessment. . . ."

[¶ 12] Addressing a challenge to an assessment for construction of a sewer line based upon the area of each lot, the Court reasoned:

"Although section 2801, R.C.1905, requires special assessments for improvements such as those in the case at bar to be levied in proportion to the benefits conferred, and in no case to be in excess of such benefits, there is no provision in the statute as to how such benefits shall be measured and ascertained. Where this is the case, the weight of authority and of reason holds that an assessment according to the area is not necessarily invalid, provided that, after a proper inspection, it is found that the increased value or benefit to the lot is in proportion to that area. . . . If, indeed, the area basis is to be used, it should be considered merely as one of many elements to be considered in determining benefits and not as the sole and only test. . . . Prior to the passage of chapter 62 of the Laws of 1905, it would seem that . . . an assessment could be made upon the area basis alone and that the commissioners were not required to make any formal finding or report of the amount each lot or tract of land was benefited.

"In 1905, however, the Legislature put itself on record as repudiating this method and as requiring all assessments to be made on the basis of benefits and of benefits alone. It was specific in the matter, so that there could be no evasion

and no dispute. It specifically required an inspection of the lots or parcels of land by the commissioners and it required the commissioners to make or cause to be made a complete list of *both the benefits and the assessments*, 'setting forth each lot or tract of land assessed and the amount such lot is benefited by the improvement and the amount assessed against it.' *See* section 2801, R.C.1905.... The finding of these facts and the doing of these things, we believe, are, under the North Dakota statutes referred to, fundamental to the levying, the confirmation, and the validity of any assessment. There is, in fact, no authority to levy an assessment until the benefits have been first ascertained.... Without such prior finding and ascertainment of benefits, indeed, the commission and the city council had no jurisdiction to proceed to a determination of the assessment as to each specific lot or tract to be assessed.... They have no right to act, and their findings are not conclusive, in cases where the commissioners have not viewed the property, have not made any specific findings of the benefits, or have adopted a method of procedure which is entirely unwarranted by the statutes, and have sought a review and confirmation of an assessment which is illegally made."

*Robertson*, 27 N.D. at 566–68, 147 N.W. at 251–52 (citations omitted).

[¶ 13] D & P and Potter summarized their reliance upon *Robertson* in their brief on appeal:

"North Dakota's Legislative Assembly has repudiated any possibility of the municipal authority determining the assessment by some formula, whether based on front footage or even area. *Robertson*, at page 251. *Davis v. City of Litchfield* [145 Ill. 313], 33 N.E. 888 (Ill.1893).... After 1905, North Dakota

repudiated any possibility of 'special taxation' by formula and mandated 'the assessment of special benefits' wherein the 'benefits are ascertained in a mode prescribed by law' [*id.*, page 891, as compared to special taxation where benefits 'are determined by the municipal authority']—FARGO fails to honor North Dakota's laws when it imposes its formula without any assessment of especial benefits."

[¶ 14] D & P's and Potter's argument ignores that this Court has, in a long line of cases decided after *Robertson*, approved the use of "formulas" such as front footage, area or value to determine the benefit to the assessed property. *See, e.g., Hector*, 2012 ND 80, ¶ 45, 815 N.W.2d 240; *Bateman*, 2008 ND 72, ¶ 16, 747 N.W.2d 117; *Serenko*, 1999 ND 88, ¶ 21, 593 N.W.2d 368; *Cloverdale Foods Co. v. City of Mandan*, 364 N.W.2d 56, 61 (N.D.1985); *Buehler v. City of Mandan*, 239 N.W.2d 522, 523, 526 (N.D.1976); *Fisher v. City of Minot*, 188 N.W.2d 745, 746–47 Syll. ¶ 2 (N.D.1971). D & P's and Potter's argument that use of such a "formula" was not sufficiently individualized to assess the special benefits to their separate tracts was rejected in *Serenko*, at ¶¶ 22–23 (citations omitted):

"The landowners and Serenkos assert this method [square footage] did not sufficiently individualize the determination of benefits to their properties, and failed to properly consider the undeveloped nature of their property.

"We have rejected similar arguments in the past and upheld assessments based upon square footage of the property. Although the landowners and Serenkos may disagree with the special assessment commission's choice of method, and with its conclusion their properties were substantially benefitted by the street improvement project, it is not our

function to reweigh the evidence. The landowners and Serenkos have failed to meet their burden of demonstrating the commission acted arbitrarily, capriciously, or unreasonably."

[¶ 15] We also note the holding in *Robertson* was based upon a much different statutory scheme. Section 2801 of the 1905 Revised Codes expressly required the members of the special assessment commission to "personally inspect any and all lots and parcels of land which may be subject to such special assessment . . . and thereupon determine the amount in which each of said lots and parcels of land will be especially benefited." The legislature has amended the statutory scheme several times since the decision in *Robertson*, most significantly by eliminating the requirement that the commission members personally inspect each lot in the improvement district before determining benefits. *See* 1999 N.D. Sess. Laws ch. 366. The legislature's omission of the commissioners' duty to personally inspect each lot clearly signals a relaxation of any requirement that they individually assess benefits on a lot-by-lot basis rather than using a guideline or formula, such as frontage or area, to all properties uniformly.

[¶ 16] We also note the Court's decision in *Robertson* was based upon a de novo review. *Robertson*'s continued validity was called into question in *Haman v. City of Surrey*, 418 N.W.2d 605, 607 (N.D. 1988), when the Court noted that our standard of review of a decision approving special assessments had changed since *Robertson*, from the broad, unlimited trial de novo employed in *Robertson* in 1914 to the extremely limited, deferential review mandated by the constitutional doctrine of separation of powers.

■ [¶ 17] Finally, we are mindful that the underlying urban landscape in our cities is far different today than it was in 1914. While it may have been feasible and practical in the *Robertson* Court's day to require the members of the special assessment commission to personally inspect each and every lot within an improvement district and independently determine the benefits to each individual lot on a case-by-case basis, such a process would be wholly impractical and unmanageable today. The legislature recognized the impracticality of such a process in modern special assessment proceedings when it amended the statutory scheme to eliminate the requirement of personal inspections. Statutes are not to be "read in isolation or applied in a vacuum," 2B Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 53.1 (7th ed.2008), and we must consider the practical effects of a particular construction and avoid absurd or ludicrous results. *See, e.g., M.M. v. Fargo Pub. Sch. Dist. No. 1*, 2010 ND 102, ¶ 12, 783 N.W.2d 806.

[¶ 18] Since this Court's decision in *Robertson* nearly one hundred years ago, the legislature has significantly amended the relevant statutory provisions, this Court has endorsed substantial developments in our special assessment caselaw, including adoption of a far more limited standard of review and express approval of frontage or square footage to determine benefits, and a century's worth of change to the urban landscape also exists. To the extent *Robertson* was based upon statutory, legal and factual premises which no longer exist, it is no longer valid precedent.

## IV

[¶ 19] D & P and Potter have raised numerous other issues. Most of those issues are controlled by our decision in *Hector*, 2012 ND 80, 815 N.W.2d 240. We have considered any remaining issues and arguments raised by the parties and find

them to be unnecessary to our decision or without merit.

[¶ 20]   The district court judgment affirming the Board's decision is affirmed.

[¶ 21]   GERALD W. VANDE WALLE, C.J., BENNY A. GRAFF, S.J., DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 22]   The Honorable BENNY A. GRAFF, S.J., sitting in place of MARING, J., disqualified.