# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

---

### 2020 ND 202

---

Deborah Holter,                                                    Petitioner and Appellant

      v.

City of Mandan, a political subdivision of
The State of North Dakota,                        Respondent and Appellee

---

### No. 20190277

---

Appeal from the District Court of Morton County, South Central Judicial District, the Honorable Cynthia M. Feland, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice, in which Justices VandeWalle and Crothers joined. Justice Tufte filed a dissenting opinion, in which Chief Justice Jensen joined.

William C. Black, Bismarck, ND, for petitioner and appellant.

Malcolm H. Brown (argued), Mandan, ND, and Amy M. Oster, Bismarck, ND, for respondent and appellee.

**McEvers, Justice.**

[¶1]   Deborah Holter appeals a district court judgment dismissing her appeal of the Mandan Board of City Commissioners' decision to specially assess her property for street improvements.  We affirm.

I

[¶2]   In February 2015, a public hearing was held regarding needed repairs to streets and alleys.  In March 2015, the Board adopted a resolution creating Street Improvement District No. 199 and a resolution declaring the cost of the improvements would be specially assessed against the benefited properties in the district in amounts proportionate to but not exceeding the benefits the properties received from the improvements.  The improvement district included construction on streets between 4th Avenue Northeast to Mandan Avenue and between Main Street and 3rd Street Northeast in Mandan.  The minutes reflect that the total cost of the project was estimated to be $3,653,297 and approximately five percent of the project would be paid by city sales tax, with the remainder to be assessed to the benefiting properties.[1]

[¶3]   The actual cost of the improvements was $3,316,595.73.  The City paid $225,000,[2] and the remaining amount of $3,091,595.73 was specially assessed to the properties especially benefited by the improvements.  In July 2017, the Mandan Special Assessment Commission published a notice of a meeting in August 2017 that contained the items of expense of the improvement, allocation of a portion of the cost to the City, and the net amount to be assessed. The notice provided a list of properties found to be especially benefited by the construction performed in the project and the amounts to be assessed.  The notice provided:

---

[1] Five percent of the estimate is roughly $182,665.
[2] More than 6.75% of the total costs.

We the undersigned, constituting the Special Assessment Commission of the City of Mandan do hereby certify that the following is a true and correct list of the particular lots of land which, in the opinion of the Commission, *are especially benefited* by the construction performed . . . showing the *amount* against each lot or tract, the same is a true and correct assessment of the property there in described to the best judgement of the members of the Commission.

(Emphasis added.)

[¶4]   In August 2017, the Special Assessment Commission approved the proposed assessments against the especially benefited properties and moved the decision to the Board for its consideration. The Board approved the special assessments in October 2017.

[¶5]   Holter owns three undeveloped residential lots in the improvement district. Each lot was assessed $15,928.40, for a total of $47,785.20. Holter objected to the assessments against her properties, claiming they exceeded the value of the benefits they receive. She also argued the method for determining the assessments was unfair because corner lot owners and non-corner lot owners were not treated equally.

[¶6]   Holter appealed the Board's decision approving the special assessments to the district court. The court twice remanded the case to the City for further findings on the value of the benefits to Holter's properties. On the second remand, the Special Assessment Commission met and determined that under the City's Special Assessment Policy, Holter's properties were benefited by the amounts assessed against them. Additional findings from the November 2018 meeting stated:

Winks [commissioner] moved in conformance with the City of Mandan's Special Assessment Policy and the methods prescribed therein, were used to decide the benefits and costs to the Holter properties/parcel number B20-1, B20-2 and B20-3 in the amount of $15,928.40 for each parcel and that the parcels are specially benefitted in that amount by reason of the improvements in Street Improvement District 199.

3

[¶7]   The court affirmed the City's special assessments against Holter's properties.  The court concluded the special assessments to Holter's properties under the City's policy were consistent with the amounts assessed to other properties and were not arbitrary, capricious, or unreasonable.

II

[¶8]   Holter contends the City failed to determine the value of the benefit to her properties and her properties were assessed in an amount exceeding the benefit to the properties.

[¶9]   We exercise a limited review of challenges to special assessments in part because of the separation of powers doctrine:

> The special assessment commission is in essence a legislative tribunal created by legislative authority to "(1) determin[e] the benefits accruing to the several tracts of land in an improvement district by reason of the construction of an improvement and (2) assess[] the costs and expenses thereof against each tract in proportion to the benefit received." Accordingly, judicial review is limited to assuring that local taxing authorities do not act arbitrarily, capriciously, or unreasonably.  Courts are not to act as a super grievance board, and we do not try special assessment cases anew or reweigh the evidence.  Rather, we begin with the presumption that assessments for local improvements are valid, and the burden is on the party challenging the validity of the assessments to demonstrate they are invalid.

*Bateman v. City of Grand Forks*, 2008 ND 72, ¶ 10, 747 N.W.2d 117 (quoting *Serenko v. City of Wilton*, 1999 ND 88, ¶ 20, 593 N.W.2d 368).

[¶10] Section 40-23-07, N.D.C.C., governs a special assessment commission's decision relating to benefits and assessments:

> The commission shall determine the amount in which each of the lots and parcels of land will be especially benefited by the construction of the work for which such special assessment is to be made, and shall assess against each of such lots and parcels of land such sum, not exceeding the benefits, as is necessary to pay its just

4

proportion of the total cost of such work, or of the part thereof which is to be paid by special assessment, including all expenses incurred in making such assessment and publishing necessary notices with reference thereto and the per diem of the commission.

[¶11] This Court has stated three requirements must be satisfied for a special assessment to comply with N.D.C.C. § 40-23-07:

The special benefit accruing to each lot or parcel of land from the improvement must be determined. The special assessment levied against each lot must be limited to its just proportion of the total cost of the improvement. The assessment against any lot or parcel of land must not exceed the benefit which has been determined to have accrued thereto.

*Bateman*, 2008 ND 72, ¶ 11, 747 N.W.2d 117.

[¶12] This Court looks at whether, on its face, the legislative act was arbitrary, capricious, or legally unreasonable. This Court stated in *Ulvedal v. Bd. of Cty. Comm'rs of Grand Forks Cty.*, 434 N.W.2d 707, 708-09 (N.D. 1989):

Several decades ago, this court addressed the proper role of courts in reviewing a tax assessment by a local governing body. *Appeal of Johnson*, 173 N.W.2d 475 (N.D. 1970). In that earlier appeal, also from an assessment of real estate in Grand Forks, this court surveyed how courts in other states approached review of assessments of property for tax purposes. We concluded that "it is not for the court to substitute its judgment for that of the lawfully designated taxing authorities, . . ." *Id*. at 484. When "there is substantial evidence to support the appraisal made by the assessing authorities and no evidence of any discrimination," *id*. at 484, a decision of county commissioners should be upheld.

Later, in *Shaw v. Burleigh County*, 286 N.W.2d 792 (N.D. 1979), this court carefully defined the scope of "de novo" review of a county commissioner's decision under NDCC 11-11-43. A decision about zoning was under review. This court recognized that it was examining the exercise of "a legislative function and not a judicial one." *Id*. at 795. For separation of powers reasons, we held:

". . . that a 'de novo' hearing, as applied to judicial review of decisions of the Board of County Commissioners under

5

Section 11-11-43, N.D.C.C., means a trial to determine whether or not the Board acted arbitrarily, capriciously, or unreasonably. Section 11-11-43, N.D.C.C., must be treated as merely providing the procedure by which the proceeding may be brought before the court to determine whether or not the Board acted properly." 286 N.W.2d at 797.

Thus, a reviewing court may not reverse a local governing body's action simply because it finds some of the material considered more convincing. Only when there is such an absence of evidence or reason as to amount to arbitrary, capricious or unreasonable action, can a reviewing court reverse. Both the district court and this court are limited to this scope of review. *Shaw, supra* at 797.

This limited review, carefully explained in *Shaw*, had been anticipated in *Johnson*:

"[T]he taxation of property is a legislative rather than a judicial function, . . . '[t]he court must presume, in the absence of contrary evidence, that the assessing officers performed their duty, and the court will not set aside an assessment merely because of a difference of opinion as to value. (Citations omitted)'" 173 N.W.2d at 481-482.

We have continued to employ this restricted concept in reviewing decisions by local governing bodies. Thus, in *Haman v. City of Surrey*, 418 N.W.2d 605 (N.D. 1988), we affirmed that a city's special assessment commission had not acted arbitrarily, oppressively or unreasonably in assessing benefits from water and sewer improvements. *See also Cloverdale Foods Company v. City of Mandan*, 364 N.W.2d 56 (N.D. 1985).

[¶13] As such, a municipality has broad discretion to determine benefits and apportion assessments and costs to properties within an improvement district. *Bateman*, 2008 ND 72, ¶ 16, 747 N.W.2d 117. There is no exact formula for quantifying benefits. *Id.* "[A]n 'assessment may be apportioned according to frontage, area, value of, or estimated benefits to, the property assessed, or according to districts or zones, or on any other reasonable basis that is fair, just, and equitable.'" *Serenko*, 1999 ND 88, ¶ 21, 593 N.W.2d 368 (quoting *Cloverdale Foods Co. v City of Mandan*, 364 N.W.2d 56, 61 (N.D. 1985)). "The method used to apportion the assessment cannot be arbitrary and must have some relation to the benefits." *Bateman*, at ¶ 16.

6

[¶14] Here, the City assessed Holter's property under its Special Assessment Policy. S*ee* N.D.C.C. § 40-22-01.2 (stating a city with a population over 10,000 must have written policies "which will be applied for cost allocation among properties benefited by a special assessment project"). The purpose of the City's policy is to "provide for and ensure consistent, uniform, fair and equitable treatment, insofar as is practical, lawful and possible for all property owners in regards to the assessment of cost for benefits to properties for the qualifying improvements as listed in the [Century Code]." The policy states the special assessment commission is responsible for determining the benefits to property within the improvement district.

[¶15] Section 3.2 of the City's policy, relating to street improvement districts, provides:

> Typical benefit allocations on single-family, residential properties can be assessed by determining a unit cost. The allocation is based on a unit cost, if similar in size, by applying an equal cost share to each parcel/lot within the district. A unit cost may be determined by taking the total project costs and dividing by the total lots within the district.

[¶16] The City assessed properties benefited by the street improvements on the basis of linear feet. Holter's three residential lots each contained 100 linear feet. The City assessed each lot $15,928.40, for a total of $47,785.20.

[¶17] Holter asserts the City failed to determine the value of the benefits to her properties. She claims the assessments exceed the benefits to her properties in violation of N.D.C.C. § 40-23-07. She contends the assessments were unreasonable because they were slightly less than the total value of the properties. To support her argument, Holter provided a letter from a real estate agent stating the approximate value of her three lots was $50,000 to $75,000.

[¶18] This Court has, in numerous opinions, approved the use of formulas such as front footage, area or value to determine the benefits to assessed properties. *D & P Terminal, Inc., v. City of Fargo*, 2012 ND 149, ¶ 14, 819 N.W.2d 491 (citing *Hector v. City of Fargo*, 2012 ND 80, ¶ 45, 815 N.W.2d 240; *Bateman*,

2008 ND 72, ¶ 16, 747 N.W.2d 117; *Serenko*, 1999 ND 88, ¶ 21, 593 N.W.2d 368; *Cloverdale*, 364 N.W.2d at 61; *Buehler v. City of Mandan*, 239 N.W.2d 522, 523, 526 (N.D. 1976); *Fisher v. City of Minot*, 188 N.W.2d 745, 746-47 Syll. ¶ 2 (N.D. 1971)).

[¶19] Holter raises arguments similar to those addressed in *Serenko*. In *Serenko*, 1999 ND 88, ¶ 22, 593 N.W.2d 368, property owners in a street improvement district were assessed based on the square footage of their lots. Some landowners disagreed with the assessments, claiming the "method did not sufficiently individualize the determination of benefits to their properties, and failed to properly consider the undeveloped nature of their property." *Id.* In rejecting the argument, this Court stated:

> We have rejected similar arguments in the past and upheld assessments based upon square footage of the property. Although the landowners and Serenkos may disagree with the special assessment commission's choice of method, and with its conclusion their properties were substantially benefitted by the street improvement project, it is not our function to reweigh the evidence. The landowners and Serenkos have failed to meet their burden of demonstrating the commission acted arbitrarily, capriciously, or unreasonably.

*Id.* at ¶ 23 (citations omitted).

[¶20] Here, Holter's properties were assessed under the City's Special Assessment Policy. The City uses the policy to determine benefits and assessments to properties in an improvement district. The special assessment commission determined that under the policy, the improvements benefited Holter's properties in the amount assessed to them, $47,785.20.

[¶21] Although the City's determination of benefits and assessments is based on a formula similar to others upheld by this Court, this case does raise some concerns. Under the City's policy, the terms "benefit" and "assessment" appear to be used interchangeably, which may explain why the special assessment commission determined the amount of the benefit to Holter's properties equaled the amounts assessed to them. However, the Special Assessment

8

Commission did more than simply take the total cost of the project and divide it by using the formula. It first deducted $225,000 from the costs and expenses. In doing so, it determined the benefits for all properties assessed was less than the total cost of the work. While the findings by the Special Assessment Commission on the amount of the benefit may be somewhat conclusory, the amount of the benefit was determined to be less than the total cost and was determined to be a just proportion of the total cost based on the City's formula.

[¶22] Despite the City's difficulty in explaining the determination of benefits, we nevertheless conclude the assessments to Holter's properties satisfy N.D.C.C. § 40-23-07. The special assessment commission determined the benefits under the City's policy, and the assessments do not exceed the benefits.

[¶23] Under this Court's limited standard of review, we conclude the City did not act arbitrarily, capriciously, or unreasonably in determining the benefits and assessments to Holter's properties.

### III

[¶24] We have considered Holter's remaining arguments and conclude they are either without merit or not necessary to our decision. The judgment is affirmed.

[¶25]   Lisa Fair McEvers
        Daniel J. Crothers
        Gerald W. VandeWalle

9

**Tufte, Justice, dissenting.**

[¶26] Because I believe the majority is going further than our precedent requires, and in doing so interprets an important procedural protection out of N.D.C.C. § 40-23-07, I respectfully dissent.

[¶27] In short, the problem is this: the City calculated its determination of benefit to Holter's property using the same formula by which it calculated the costs it assessed to that property. Under the City's policy, the benefit determination for a lot is defined as the unit cost allocation. The City's reduction of total assessments by five percent does not convert what is a cost allocation into a benefit determination. The City policy thus subverts the express intent of the statute that costs assessed to a lot be limited to no more than the benefit. The majority acknowledges the City's interchangeable use of assessment and benefit but appears to announce a rule that affirms the City's direct allocation of cost because something less than 100% of the total cost is assessed against the properties in the district.

[¶28] As the majority explains, we have long approved formulaic allocation of costs by the assessed lots' area or front footage. We have also approved formulas to determine benefits to a property based on front footage, area, or value. *D&P Terminal v. City of Fargo, Inc.*, 2012 ND 149, ¶ 14, 819 N.W.2d 491. Where we have approved formulas to calculate benefits, they were applied under N.D.C.C. § 40-23-07 to set "'caps,' or maximums" to limit the assessed costs. *Id.* at ¶ 8 ("These caps are generally based upon front footage or square footage of the assessed property, and the suggested benefit amount is generally less than the actual cost of the improvements."); *Hector v. City of Fargo*, 2012 ND 80, ¶ 5, 815 N.W.2d 240 ("The amount determined under the formula is considered to be the amount the property benefits from the improvement *without considering the actual cost* of the improvement." (emphasis added)).

[¶29] Here, by defining the benefit in terms of the lot's unit costs, the City has eliminated part of the statutory protection for property owners. "When an assessment exceeds the benefits to the property assessed, the excess is a taking of property without due process of law." *Bateman v. City of Grand Forks*, 2008 ND 72, ¶ 20, 747 N.W.2d 117 (citing *Cloverdale Foods Co. v. City of Mandan,*

10

364 N.W.2d 56, 61 (N.D. 1985)). To avoid becoming a "super grievance board," *Hector,* 2012 ND 80, ¶ 13, 815 N.W.2d 240, this Court has incrementally reduced its review of special assessments. On the issue of whether assessed costs exceed benefits, the majority now applies our increasingly limited standard of review to approve the City's *ipse dixit* that benefit equals cost[3] and thereby avoid review under a statute designed to protect against uncompensated takings. Under the City policy, it is impossible to arrive at a finding that costs exceed benefits. That should be a clear warning there is something amiss. The rule announced by the majority reduces the standard of review, limited though it may be, to something that is neither a standard nor provides any review.

[¶30] When the City voted to accept a bid and proceed with the project, it legislatively determined that the total project cost was justified by the total benefit of the project. We properly do not review that legislative decision. That is the only point in this process where any determination was made that cost did not exceed benefit. But that determination was made as to total project cost and total project benefit, not to the benefit accruing to each lot.

[¶31] This Court has consistently identified three separate requirements of N.D.C.C. § 40-23-07: (1) determine the "special benefit" to each lot; (2) assess costs against each lot "limited to its just proportion of the total cost"; and (3) ensure "[t]he assessment against any lot or parcel of land must not exceed the benefit which has been determined to have accrued thereto." *Hector*, 2012 ND 80, ¶ 42, 815 N.W.2d 240; *Bateman*, 2008 ND 72, ¶ 11, 747 N.W.2d 117; *Cloverdale Foods,* 364 N.W.2d at 61. By merging the determination of benefits with costs, the City satisfies only requirement 2, that costs are assessed in proportion to benefits, and only because it ensures they are identical and so always at a 1:1 ratio.

---

[3] The City defines benefit equal to cost, whether or not it assesses total cost less 5% or total cost less 6.75%. Majority, at ¶¶ 2-3. Whether the City assesses 100% of total costs or 95% or 93.25%, the benefit determination is still calculated as a function of cost and so cannot supply the limitation as intended by the statute.

11

[¶32] The Majority, at ¶ 21, generously notes the City policy appears to use the terms "benefit" and "assessment" interchangeably. This is another indication that the policy does not comply with the statutory requirement to compare assessed costs with benefits and ensure the costs do not exceed the benefits. Because the City policy uses the terms interchangeably, it is essentially comparing the assessed amount with itself. In every instance, A = A. Costs will never exceed benefits where benefits by definition equal costs.

[¶33] In deferring to the City's subversion of the statute, the majority makes the same error. Reasoning that by deducting a modest percentage of the total project cost from the total amount assessed, the City had decoupled cost and benefit, the majority infers the City "determined the benefits for all properties assessed was less than the total cost of the work," and "the amount of the benefit was determined to be less than the total cost." Majority, at ¶ 21. This statement cannot be squared with the statutory requirement that the costs "not exceed[] the benefits."

[¶34] By applying the standard as I suggest we should, we would not substitute our judgment for that of the board. Reweighing evidence is properly not within the scope of judicial review under separation of powers. Instead, we review only to ensure the local taxing authority does not act "arbitrarily, capriciously, or unreasonably, or there is not substantial evidence supporting the decision." *D&P Terminal, Inc. v. City of Fargo*, 2012 ND 149, ¶ 5, 819 N.W.2d 491. What is not beyond judicial review is to ensure the City makes some determination of benefits that is separate from its allocation of costs so that it might ensure that the allocated costs do not exceed the benefit, as required by the statute and ultimately by the takings clause. By approving the use of a single formula to calculate both benefits and costs, the majority allows the City to shortcut the statutory process and avoid the requirement to ensure the benefit to each lot does not exceed the costs.

[¶35] We have never before said an assessment process may treat costs and benefits interchangeably so long as they are proportional. Consistent with our prior cases, I would interpret N.D.C.C. § 40-23-07 to require some reasonable determination of estimated benefits to each lot, independently from

assessment of costs. "[N]o precise formula for quantifying benefits" is required—a city may determine benefits by frontage, area, value, or "any other reasonable basis that is fair, just, and equitable." *Hector*, 2012 ND 80, ¶ 43, 815 N.W.2d 240 (quoting *Serenko v. City of Wilton*, 1999 ND 88, ¶ 21, 593 N.W.2d 368); *Cloverdale Foods Co.,* 364 N.W.2d at 61-62 (approving determination of benefits received from sewer project by "water use" method) (relying on per lot use of parking ramp to determine benefits in *Patterson v. City of Bismarck*, 212 N.W.2d 374 (N.D. 1973)). But because N.D.C.C. § 40-23-07 requires the benefit to be compared to allocated cost, the benefit determination may not be calculated by the same formula that allocates cost. To do so misapplies the law.

[¶36] Under the City's policy, if the bids for a project are higher than expected, the City's benefit determination will increase by an identical percent. New pavement and sidewalks increase the value of adjacent property, which would constitute a benefit under N.D.C.C. § 40-23-07. But the benefit is not necessarily the same as or connected to the cost of the project. It is one thing to say property along a street will benefit from new pavement by an amount proportional to its area or frontage. It is quite another to say that if the cost of paving doubles, the benefit also doubles.

[¶37] The problem is best illustrated by two examples. Suppose the City decides to proceed with a paving project based on its engineer's estimate that it will cost $5 million. In this example, if the City were to make an independent determination, it would find the project was expected to benefit the affected area by approximately $6 million. But applying City policy section 3.2, (reproduced in Majority, at ¶ 15) it calculates benefits to each lot as a function of unit costs, and so proceeds with a finding that both costs and benefits are $5 million and then spreads an equal cost and benefit proportionally to each lot. During the project, suppose there is a labor strike, materials shortage, or other disruption that results in project costs doubling to a total of $10 million. Under the City policy, because the costs have doubled, the benefits have also doubled. A project that it initially determined by formula would benefit the affected lots by a total of $5 million it now determines by formula would benefit those lots by the increased total cost of $10 million. One can readily see that if the City

13

followed the statute and the cases we have decided before today, the City would have had to determine benefit without regard to cost and would have had to limit the assessment of costs to its pre-project determination of benefits, which in this hypothetical would be $6 million.

[¶38] For a second illustrative example, suppose the existing pavement is five years old and is in usable condition. The City could bid the same repaving project at the same cost as in the first example. Because of the way the City policy determines benefit from cost, it will again conclude that each lot benefits according to its proportional fraction of the cost. But in this instance, the pavement to be replaced is still in reasonable condition and so the actual benefit to the adjacent properties is the difference between five-year-old pavement and new pavement, a negligible improvement no matter how it is determined. These examples illustrate the dangers inherent in conflating costs with benefits.

[¶39] Paragraph 21 of the majority opinion also expands this Court's deference to political subdivisions in special assessment cases beyond the arguments presented by the City. Paragraph 21 asserts "the Special Assessment Commission did more than simply take the total cost of the project and divide it by using the formula. It first deducted $225,000 from the costs and expenses. In doing so, it determined the benefits for all properties assessed was less than the total cost of the work." The City argued, and the majority affirms, that the City satisfied the statutory requirement to determine benefit, because it need not determine benefit *separately* from cost. But at no point in this Court or in the district court did the City ever articulate this deduction as a rationale supporting its determination of benefit in the special assessment process. There is not a single reference to the $225,000 reduction of costs and expenses in the City's brief to this Court, and the record does not reflect that particular rationale ever having been asserted as a justification or an explanation by the City to the district court—not in the first appeal to the district court, and not after either of the two district court remands to the City demanding an explanation of the benefits. This case appears to represent the first instance where this Court, in the absence of any satisfactory explanation of how a political subdivision determined the amount of benefit to each lot resulting

14

from a special assessment project, engaged in its own search of the record to invent an explanation on behalf of a political subdivision. While great deference should be afforded to the legislative function of a political subdivision, this Court should not be satisfied by any conceivable justification that the Court can imagine, in the absence of a rational explanation being provided by the political subdivision.

[¶40] I would conclude the City did not comply with the requirements of N.D.C.C. § 40-23-07, reverse the district court, and remand to the City to re-determine the benefits to Holter's lots without considering the actual per-lot cost and then assess only those costs that do not exceed the benefits.

[¶41] I respectfully dissent.

[¶42]  Jerod E. Tufte
       Jon J. Jensen, C.J.


**Jensen, Chief Justice, Dissenting On the Denial of the Petition for Rehearing.**

[¶43] The majority has denied Holter's petition for rehearing. I have voted to grant the petition for rehearing. The petition, in part, requests an opportunity to address the rationale underlying the majority's affirmance of the special assessment.  Paragraph 21 of the majority opinion asserts "the Special Assessment Commission did more than simply take the total cost of the project and divide it by using the formula. It first deducted $225,000 from the costs and expenses. In doing so, it determined the benefits for all properties assessed was less than the total cost of the work." What paragraph 21 of the majority opinion omits is recognition that the City never advanced that argument in this Court or in the district court. This Court, not the City, articulated the $225,000 deduction as a rationale supporting the City's determination of benefit in the special assessment process. There is not a single reference to the $225,000 reduction of costs and expenses in the City's brief to this Court. The record does not reflect the City ever advancing the rationale articulated by this Court as a justification or an explanation to the district court—not in the first

15

appeal to the district court, and not after either of the two district court remands to the City demanding an explanation of the benefits. The petition, in part, seeks an opportunity to address the rationale of this Court, an opportunity the Holter has never been given because the rationale was never advanced by the City and was first articulated in the opinion of this Court issued subsequent to the briefing and oral argument.

[¶44] This Court rightfully affords great deference to local taxing authorities. However, we should not extend that deference to the point that we deny taxpayers an opportunity to address the rationale this Court ultimately selects as the rationale for affirming the decision of a local taxing authority. Justice VandeWalle noted the danger of overextending and understating this Court's review of local tax authorities as follows:

> If the courts are to review these actions, and it is not necessary as a matter of constitutional right that they be empowered to do so, it should be a meaningful review recognizing the limitations thereon by the doctrine of separation of powers. Anything less than a meaningful review gives a false sense of adherence to our system of checks and balances which makes the judicial branch little more than an apologist for the actions of the executive branch of government, on the one hand, or a usurper of powers on the other. Neither is a desirable result.

*Koch Hydrocarbon Co. v. State By & Through State Bd. of Equalization*, 454 N.W.2d 508, 515 (N.D. 1990) (VandeWalle, Justice, concurring specially).

[¶45] My concern is a decision founded on rationale never advanced by the taxing authority, without providing a taxpayer an opportunity to respond, makes this Court "little more than an apologist for the actions of the executive branch of government." Following a rehearing we may elect not to alter our prior opinion, but we should at least allow taxpayers an opportunity to respond to a rationale articulated first by this Court and a rationale that was never previously advanced by the taxing authority.

[¶46] Jon J. Jensen, C.J.
Jerod E. Tufte