Corrected Opinion Filed 9/17/24 by Clerk of the Supreme Court
Corrected Opinion Filed 9/13/24 by Clerk of the Supreme Court

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

---

## 2024 ND 172

---

Senske Rentals, LLC,                                     Petitioner and Appellant

v.

City of Grand Forks,                                     Respondent and Appellee

---

## No. 20230397

---

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Lonnie Olson, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Tufte, Justice, in which Chief Justice Jensen and Justice Bahr joined. Justice McEvers filed an opinion concurring in part and dissenting in part, in which Justice Crothers joined.

Daniel M. Baczynski (argued), West Fargo, ND, and DeWayne A. Johnston (on brief), Grand Forks, ND, for petitioner and appellant.

Jenna R. Bergman (argued), Minneapolis, MN, and Corey J. Quinton (on brief), Fargo, ND, for respondent and appellee.

**Tufte, Justice.**

[¶1]   Senske Rentals appeals a district court order affirming a City of Grand Forks decision to specially assess property for street improvements. The central issue in this appeal is whether the City's special assessment commission properly determined the benefits accruing to Senske's property as required by N.D.C.C. § 40-23-07. We conclude N.D.C.C. § 40-23-07 requires a determination of special benefits independent of, and without regard to, the cost of the improvement project, and Senske has shown the City did not make such a determination. We reverse the district court order and remand to the City.

I

[¶2]   Senske owns property in a subdivision affected by a City of Grand Forks improvement project to pave gravel roads and install street lighting. In January 2021, the city council approved a resolution of necessity creating a special assessment district for the project and referred the project to the City's special assessment commission. The City engineers prepared an estimate for the cost of the project, and notice was provided to affected property owners. The commission discussed the matter and found "[t]he benefits received from the project are for access, both for property and fire protection, dust suppression, pedestrian accommodations and provides some drainage control and to provide lighting for pedestrian safety." The commission then voted to "assign benefits" to the affected property on the basis of frontage, sideage, and square footage.

[¶3]   Property owners were notified of the potential assessments. Public input meetings were held in February and March of 2021 during which property owners expressed concerns regarding the assessments. The city council reviewed and approved amendments to the project and increased the City's share of the project. The City opened construction bids and approved the low bid of $3.8 million. Notice of the special assessments was provided to the affected property owners via letter in August 2022. At a public meeting on September 6, 2022, the city council passed a resolution directing the commission to levy special

assessments in the amount of approximately $2.5 million on the property in the special assessment district.

[¶4]   The commission held a public hearing on September 29, 2022. Jim Senske, on behalf of Senske Rentals, protested the proposed assessments, contesting the assessments as excessive. The commission ultimately approved the special assessments. Through counsel, Senske filed a letter of protest and appealed the special assessments to the city council.

[¶5]   On October 24, 2022, the city council held a hearing on Senske's appeal. Senke argued that the policy did not fairly allocate costs and that the commission did not determine the special benefit as required by law. Senske agreed the City provided "a very good cost analysis" but argued "when I look at legislative dictate that says the special assessment commission needs to look at a project and determine a benefit, I don't see that as a cost analysis." He asked the council to send the matter "back to the special assessment commission and say okay put a number on the benefit." Senske explained he appeared at the commission meeting to discuss it and they said "you'll have to go talk to the city engineering—we don't make any of those determinations." Mr. Senske emphasized his argument was the determination of benefit: "I don't see that it is something that should first be dependent on cost." He requested the city council "not accept special assessment commission's failure to do the analysis required by law separate from the money."

[¶6]   At the city council hearing, Senske was asked if he agreed the special assessment commission had followed the policy, to which he said, "We don't know that because they simply said . . . city council sent us the number. We're taking that number and moving forward. There wasn't any analysis done; there wasn't a benefit found." Referring to our decision in *Bateman v. City of Grand Forks*, 2008 ND 72, 747 N.W.2d 117, Senske explained that a city may consider a variety of possibilities for determining benefit and what it would be. After Senske concluded, a council member asked: "Don't we always special assess based upon . . . the financial cost of the project per square foot? That's the way we do it; that's the way we've always done it? Correct?" The City Attorney responded, "I believe that's correct."

2

[¶7] The City's attorney then provided an explanation of the statutory requirements for special assessments, the City's adopted policy for assessments and benefits, how the policy was followed for this project, and case law relating to special assessments. The city council, concluding the commission followed the City's policy and its actions were not arbitrary, capricious, or unreasonable, then approved the commission's findings for the project. The city council denied Senske's appeal and voted to approve the recommendations of the commission, certified the special assessments for the project, and approved the findings for the project.

[¶8] On November 23, 2022, Senske appealed to the district court, arguing the commission erred in its decision and the special assessment amounted to an unconstitutional taking. Senske also moved that additional evidence be submitted for the appeal and later moved to strike from the record a "Benefit and Assessment" chart. The court granted Senske's motion to allow the record to be supplemented with an electronic recording of the October 24, 2022 appeal hearing, and denied his other motions. On October 13, 2023, the court affirmed the city council's decision to approve the commission's determination on the special assessments for the project. Senske appeals.

II

[¶9] Senske argues the district court erred in denying his motion to strike the "Benefit and Assessment" chart from the record on appeal. Senske also appeals the court's denial of his untimely motion to supplement the record. The Benefit and Assessment chart is a critical document in this appeal because it contains the commission's determination of the amount of benefits to each lot. Because it is unnecessary to our decision, we need not consider and do not address the district court's denial of Senske's motion to supplement the record.

[¶10] Senske argues the Benefit and Assessment chart should be excluded from the record on appeal because it violates N.D.C.C. § 28-32-44, which limits the record on appeal from an administrative order. Senske's argument is misplaced because the record on appeal is not governed by N.D.C.C. § 28-32-44, which controls the certified record for administrative appeals, but by N.D.C.C. § 28-34-

01, which governs the record for appeals from decisions of a local governing body. Subsection 28-34-01(2), N.D.C.C., provides:

> 2. The appellee shall prepare and file a single copy of the record on appeal with the court. Within thirty days, or such longer time as the court by order may direct, after the notice of appeal has been filed in the court, and after the deposit by the appellant of the estimated cost of a transcript of the evidence, the local governing body shall prepare and file in the office of the clerk of the court in which the appeal is pending the original or a certified copy of the entire proceedings before the local governing body, or such abstract of the record as may be agreed upon and stipulated by the parties, including the pleadings, notices, transcripts of all testimony taken, exhibits, reports or memoranda, exceptions or objections, briefs, findings of fact, proposed findings of fact submitted to the local governing body, and the decision of the local governing body in the proceedings. If the notice of appeal specifies that no exception or objection is made to the local governing body's findings of fact, and that the appeal is concerned only with the local governing body's conclusions based on the facts found by it, the evidence submitted at the hearing before the local governing body must be omitted from the record filed in the court. The court may permit amendments or additions to the record to complete the record.

[¶11] Although the district court analyzed the issue under N.D.C.C. § 28-32-44, under N.D.C.C. § 28-34-01(2), the court also has discretion whether to allow amendments or additions to the record. *Compare* N.D.C.C. § 28-32-44(8) ("The court may permit amendments or additions to the record filed by the administrative agency in order to complete the record.") *with* N.D.C.C. § 28-34-01(2) ("The court may permit amendments or additions to the record to complete the record."). The question under both provisions is whether the court abused its discretion in declining to strike the Benefit and Assessment chart from the record.

[¶12] As required under N.D.C.C. § 28-34-01(2), the city council filed the record on appeal in December 2022. Section 28-34-01(2), N.D.C.C., permits amendments to the record. The district court found Senske's motion to strike the Benefit and Assessment document was made approximately eight months after the record

4

had been filed—months after the deadline for filings related to completeness of the record—and Senske provided no reasonable grounds for delay. The court also found the documents were appropriate to be included in the record on appeal.

[¶13] The district court had discretion whether to strike the document from the record filed by the city council. N.D.C.C. § 28-34-01(2). The court's findings that the document was relevant and that Senske's motion was untimely and provided no grounds for delay are supported by the record. We conclude the court did not abuse its discretion in denying Senske's motion to exclude the Benefit and Assessment chart from the record.

### III

[¶14] Senske argues the commission failed to perform the required benefit analysis under N.D.C.C. § 40-23-07. To address this claim, we must first consider our scope of review and the statutory framework governing special assessments.

### A

[¶15] Our scope of review in an appeal from a decision of a local governing body is the same as the district court's. *Senske Rentals, LLC v. City of Grand Forks*, 2023 ND 55, ¶ 10, 988 N.W.2d 598 ("*Senske I*"). Our review of challenges to special assessments is limited in part because of the separation of powers doctrine:

> The special assessment commission is in essence a legislative tribunal created by legislative authority to (1) determine the benefits accruing to the several tracts of land in an improvement district by reason of the construction of an improvement and (2) assess the costs and expenses thereof against each tract in proportion to the benefit received. Accordingly, judicial review is limited to assuring that local taxing authorities do not act arbitrarily, capriciously, or unreasonably. Courts are not to act as a super grievance board, and we do not try special assessment cases anew or reweigh the evidence. Rather, we begin with the presumption that assessments for local improvements are valid, and the burden is on the party challenging the validity of the assessments to demonstrate they are invalid.

5

*Id.* (cleaned up).

[¶16] We "independently determine the propriety of the [governing body's] decision without giving special deference to the district court decision." *Grand Prairie Agric., LLP v. Pelican Twp. Bd. of Supervisors*, 2021 ND 29, ¶ 6, 955 N.W.2d 87 (quoting *Gowan v. Ward Cnty. Comm'n*, 2009 ND 72, ¶ 5, 764 N.W.2d 425). "The governing body's failure to correctly interpret or apply the law is arbitrary, capricious, and unreasonable conduct." *Id.*

[¶17] The interpretation of an ordinance or a statute is a question of law, which is fully reviewable on appeal. *Hagerott v. Morton Cnty. Bd. of Comm'rs*, 2010 ND 32, ¶ 13, 778 N.W.2d 813.

> Our primary purpose in interpreting a statute is to determine the legislative intent, and we start with the plain language of the statute and give each word of the statute its ordinary meaning. *City of Fargo v. Hofer*, 2020 ND 252, ¶ 8, 952 N.W.2d 58. We give words their plain, ordinary, and commonly understood meaning, unless they are specifically defined or a contrary intention plainly appears. N.D.C.C. § 1-02-02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. *Gooss v. Gooss*, 2020 ND 233, ¶ 7, 951 N.W.2d 247. "We presume the legislature did not intend an absurd or ludicrous result or unjust consequences, and we construe statutes in a practical manner, giving consideration to the context of the statutes and the purpose for which they were enacted." *Laufer v. Doe*, 2020 ND 159, ¶ 11, 946 N.W.2d 707 (quoting *PHI Fin. Servs., Inc. v. Johnston Law Office, P.C.*, 2020 ND 22, ¶ 10, 937 N.W.2d 885).

*Grand Prairie Agric.*, 2021 ND 29, ¶ 7. "The statutes granting cities the power to make special assessments must be strictly construed, and the conditions imposed must be specifically observed and performed." *Nandan, LLP v. City of Fargo*, 2015 ND 37, ¶ 15, 858 N.W.2d 892 (citing *Dakota Land Co. v. City of Fargo*, 224 N.W.2d 810, 813 (N.D. 1974)). "The omission of any of the statutory conditions is fatal to the legality of all proceedings attempted to be had under it." *Id.*

B

[¶18] Section 40-23-07, N.D.C.C., governs determinations of special assessments:

6

The commission shall determine the amount in which each of the lots and parcels of land will be especially benefited by the construction of the work for which such special assessment is to be made, and shall assess against each of such lots and parcels of land such sum, not exceeding the benefits, as is necessary to pay its just proportion of the total cost of such work, or of the part thereof which is to be paid by special assessment, including all expenses incurred in making such assessment and publishing necessary notices with reference thereto and the per diem of the commission.

*See also* N.D.C.C. §§ 40-23-11 ("No assessment shall exceed the benefits as determined by the commission to the parcel of land assessed."), 40-23-15 ("[N]o assessments as adjusted shall exceed the benefits to the parcel of land on which it is assessed as determined by the assessment commission.").

[¶19] We have long identified three primary requirements that must be satisfied for a special assessment to comply with N.D.C.C. § 40-23-07:

The special benefit accruing to each lot or parcel of land from the improvement must be determined. The special assessment levied against each lot must be limited to its just proportion of the total cost of the improvement. The assessment against any lot or parcel of land must not exceed the benefit which has been determined to have accrued thereto.

*Senske I*, 2023 ND 55, ¶ 12; *Hector v. City of Fargo*, 2012 ND 80, ¶ 42, 815 N.W.2d 240; *Bateman*, 2008 ND 72, ¶ 11; *Cloverdale Foods Co. v. Mandan*, 364 N.W.2d 56, 61 (N.D. 1985); *Northern Pac. Ry. Co. v. City of Grand Forks*, 73 N.W.2d 348, 351 (N.D. 1955).

[¶20] When reviewing the determination of benefits accruing to each lot under the first part of this test, we have stated:

In summary, a reviewing court may not reverse a local governing body's action simply because it finds some of the material considered more convincing. A reviewing court can only reverse when there is such an absence of evidence or reason as to amount to arbitrary, capricious, or unreasonable action. As such, a municipality has broad discretion to determine benefits and apportion assessments and costs to properties within an

7

improvement district. There is no exact formula for quantifying benefits. An assessment may be apportioned according to frontage, area, value of, or estimated benefits to, the property assessed, or according to districts or zones, or on any other reasonable basis that is fair, just, and equitable.

*Senske I*, 2023 ND 55, ¶ 14 (cleaned up).

C

[¶21] Section 40-23-07, N.D.C.C., plainly outlines three primary requirements the commission must follow in making special assessments. First, the commission must determine the amount of special benefit to each lot from the improvement. Second, the commission must assess against each lot "its just proportion" of the costs to be specially assessed, whether that is the "total cost" or a "part thereof which is to be paid by special assessment." Third, those two amounts must be compared to ensure the special assessment against each lot does "not exceed[] the benefits."

[¶22] Much of the statutory structure for municipal special assessments originated in the 1905 act. *See* Scott D. Wegner, *Not So Special: Special Assessments and the Fading Concept of Benefit*, 97 N.D. L. Rev. 67 (2022). The language at issue here is in all material respects unchanged from the 1905 act, which required the commission to:

> determine the amount in which each of said lots and parcels of land will be especially benefitted by the construction of the work . . . and thereupon assess against each of such lots and parcels of land, such sum, not exceeding such benefits, as shall be necessary to pay its just proportion of the total cost of such work, or such part thereof as is to be paid by special assessment . . . .

1905 N.D. Sess. Laws ch. 62, § 166. Since 1905, the most significant changes in the statutory scheme or our review of actions taken under it were the removal of trial de novo in the Supreme Court, *Haman v. City of Surrey*, 418 N.W.2d 605, 607 (N.D. 1988), and the removal of the requirement that commissioners personally view the lots to be assessed. *D&P Terminal, Inc. v. City of Fargo,* 2012 ND 149, ¶ 15, 819 N.W.2d 491.

8

[¶23] Our jurisprudence has consistently, if not always clearly, distinguished between a claim that the commission erred in determining benefit and a claim that the commission failed to follow the process required by statute. *Bateman*, 2008 ND 72, ¶¶ 10-11 (describing "statutory requirements that must be followed" while declining to reweigh evidence or try cases anew); *Haman*, 418 N.W.2d at 607-08 (affirming City on "critical factual issue" of the extent of benefit after two-day bench trial and separately considering whether required statutory notice was provided); *Soo Line R.R. Co. v. City of Wilton*, 172 N.W.2d 74, 79 (N.D. 1969) (distinguishing question of whether there is substantial evidence to support the decision of the special assessment commission from question of whether there was a defect in the proceedings); *Hale v. City of Minot*, 201 N.W. 848, 849 (N.D. 1924) (concluding Hale stated a cause of action by pleading the City had "wholly failed to follow the requirements of the statute in determining the benefits and making the assessments"). We defer on a commission's factual determinations, but we do not defer on questions of legal interpretation, including whether the required process has been followed. *Hector*, 2012 ND 80, ¶ 13 ("A local governing body's failure to correctly interpret and apply controlling law constitutes arbitrary, capricious, and unreasonable conduct."). If the statutory process was followed, we defer to the commission's factual determination of benefits based on its consideration of the information before it—we do not reweigh the information the commission relied on in determining special benefit.

[¶24] The commission must have some basis for its determination of benefits. *Northern Pac. Ry. Co.*, 73 N.W.2d at 352 (reversing and remanding for entry of injunction where record contained "only the statement the benefits exceeded the assessment" and each lot's assessment was made "without regard to its location, character, present use or adaptability for future use"). Our cases consistently describe the factual information considered by the commission as the basis for determining benefits. *See, e.g.*, *Bateman*, 2008 ND 72, ¶¶ 22-24; *Serenko v. City of Wilton*, 1999 ND 88, ¶ 23, 593 N.W.2d 368; *Farmers Union v. Grand Forks Cnty.*, 443 N.W.2d 907, 909 (N.D. 1989); *Haman,* 418 N.W.2d at 607-09.

[¶25] The "amount" of special benefit to a lot is related to but distinct from its "just proportion." Section 40-23-07 provides: "The commission shall determine

9

the amount in which each of the lots and parcels of land will be especially benefited by the construction of the work for which such special assessment is to be made." It is this "amount" that is then used to limit the assessment to "such sum, not exceeding the benefits." In order to compare two things and determine whether one exceeds the other, they must be in the same unit of measurement. A special assessment will be denominated in dollars. To ensure the assessment does not exceed the benefits, the "amount" of special benefit must also be in dollars. The statute's limitation of assessment not exceeding benefit protects against concerns of unconstitutional takings. *Bateman*, 2008 ND 72, ¶ 20 (citing *Cloverdale Foods*, 364 N.W.2d at 61). The statute's requirement that assessments on a lot be in "just proportion" to benefit also protects against due process concerns. *Northern Pac. Ry. Co.*, 73 N.W.2d at 350-51 ("compliance with the foregoing statutory requirements [Section 40-2307 (N.D.R.C. 1949)] would undoubtedly remove all constitutional objections").

[¶26] We have approved the use of "formulas" by special assessment commissions in determining benefit. We have not carefully distinguished between determining the amount or the proportion. The cases show we have approved formulas in situations where the "formula" was applied to determine relative benefits for purposes of "just proportion" and also *as a factor* in determining the amount of benefit to a lot. We have used the term "formula" in reference to apportionment by front feet, square feet, and sideage. *See, e.g.*, *Bateman*, 2008 ND 72, ¶ 3. These "formulas" can only yield a relative benefit, not an absolute benefit.

D

[¶27] We recognize the importance of *stare decisis* in maintaining stability in the law, but we must also ensure that our interpretations faithfully reflect the plain meaning of statutes and give effect to intent expressed in the legislation. The doctrine of *stare decisis* is not absolute, and it is our duty to correct prior errors, particularly when new arguments or different facts reveal flaws in our previous reasoning. *See Green v. Green*, 2009 ND 162, ¶ 5, 772 N.W.2d 612 (overruling *Lagro v. Lagro*, 2005 ND 151, 703 N.W.2d 322); *Kadrmas, Lee & Jackson, P.C. v. Bolken*, 508 N.W.2d 341, 345-46 (N.D. 1993) (overruling *Erenfeld v. Erenfeld*, 196 N.W.2d 406

10

(N.D. 1972) and adopting the reasoning of the dissenters). Although *Holter v. City of Mandan*, 2020 ND 202, 948 N.W.2d 858, is a recent decision of this Court, and we acknowledge there is a need for stability in the law, there is also a need to faithfully interpret statutes according to their plain meaning, giving effect to statutory commands. It is important for us to correct an error when new arguments are made or different facts in the record lead us to conclude a prior interpretation was incorrect. Here, we reexamine N.D.C.C. § 40-23-07 in light of additional arguments and a better-developed record compared to *Senske I*. We conclude that *Holter* misinterpreted key aspects of the statute governing special assessments.

[¶28] This Court's decision in *Holter v. City of Mandan* misinterpreted N.D.C.C. § 40-23-07 by approving an assessment process that treated the determination of benefits as the same as the allocation of costs, rendering superfluous the requirement to ensure a lot's assessments do not exceed benefits to that lot. By relying on the City's decision to pay $225,000 from general funds and specially assess the remainder, the majority did not account for section 40-23-07, N.D.C.C., which expressly contemplates that only "part thereof which is to be paid by special assessment." Despite acknowledging the Mandan policy used "benefit" and "assessment" interchangeably, *Holter*, 2020 ND 202, ¶ 21, the majority approved a method that used the same formula to determine both cost and benefit. Prior to *Holter*, we had consistently recognized two separate statutory requirements relating to determination of benefit: (1) assessment in proportion to each lot's special benefit and (2) assessment not exceeding the benefit to each lot. By extending our prior approvals of formulas, *Holter* merged the two separate statutory requirements for determination of benefits. *See* Wegner, *supra*, at 114 ("As one commentator stressed, '[i]n order to understand the procedures usually followed, it is important to distinguish between the allocation of costs and the allocation of benefits.'"). For the reasons stated in the dissenting opinions, this was error, and *Holter* is to that extent overruled. *Holter v. City of Mandan*, 2020 ND 152, ¶¶ 26-42, 946 N.W.2d 524 (Tufte, J., dissenting); *Holter*, 2020 ND 202, ¶¶ 43-46 (Jensen, C.J., dissenting from denial of petition for rehearing). Insofar as it permits a determination of special benefits to a lot to be calculated as a share of the costs, *Holter* is overruled. To be clear, section 40-23-07, N.D.C.C., permits allocation of the entire cost, but only if the cost assessed to

11

each lot is "not exceeding the benefits." Even if we assume the decision to move forward with the project was a legislative judgment that the total project cost did not exceed the total project benefit, the commission may specially assess to a lot only those project costs that do not exceed the amount the lot is "especially benefited by the construction of the work."

[¶29] The actions of the City and the majority opinion in *Holter* flow from the imprecision in our prior decisions approving of "formulas." *Holter*, 2020 ND 202, ¶ 18 (collecting cases). Formulas involve math. Lawyers often acknowledge math as a weakness. Many are fond of saying they went to law school because they were bad at math. *See* Arden Rowell & Jessica Bregant, *Numeracy and Legal Decision Making*, 46 Ariz. St. L.J. 191, 193 (2014) ("judges and jokesters alike share the assumption that attorneys struggle with numbers"). Despite the risks of mixing law and math, the problem we resolve here is one familiar to lawyers: inconsistent understandings of the word "formula." We illustrate the permissible and impermissible application of formulas to better explain our reasoning.

[¶30] In *Bateman*, we approved use of a "front footage formula." 2008 ND 72, ¶ 3. The challenge in *Bateman* was to the City's apportionment of assessments. *Id.* at ¶¶ 1, 8, 15. We said, "There is no precise formula for quantifying benefits," which reasonably may be understood to mean determining a quantity or amount of benefits. *Id.* at ¶ 16. But the decision approves only of assessing according to frontage to "secure an assessment in proportion to the benefits" and thus satisfy the statutory requirement for "just proportion." *Id. See also Serenko*, 1999 ND 88, ¶¶ 21-23 (approving of square footage formula to satisfy statutory directive of "just proportion" and rejecting invitation to reweigh evidence of special benefit); *Cloverdale Foods*, 364 N.W.2d at 61-62 (approving formula to apportion benefits); *Buehler v. City of Mandan*, 239 N.W.2d 522, 525-26 (N.D. 1976) (rejecting argument that "special assessment commission is required to apply the provisions of Chapter 40-23.1, N.D.C.C., when it uses square feet as a factor in determining special benefits").

[¶31] Our decision in *Hector v. City of Fargo* describes "a formula to determine the benefit a property receives for various projects based on front footage or

12

square footage." 2012 ND 80, ¶ 44. The City of Fargo "formula does not consider the actual cost of the improvements and the benefit calculated is generally less than the actual cost." *Id.* Other than front footage or square footage, the opinion does not indicate what other information the formula depends on. *Id.* Our decisions in *Hector* and later that year in *D&P Terminal, Inc.*, rejected a challenge to the same Fargo assessment policy. 2012 ND 149, ¶ 10. These decisions ratify a use of formulas in support of benefit determinations that is consistent with our interpretation of N.D.C.C. § 40-23-07 here. In both cases, a formula was used to determine relative benefit between lots for purposes of allocating special assessments according to the lots' "just proportion" under the statute. *D&P Terminal*, at ¶¶ 9-10. In each case, the separate requirement that assessments not exceed benefits was not at issue, and, moreover, the policy specified that benefit was determined without regard to cost and applied as a cap or a maximum assessment, consistent with that requirement.

[¶32] One simple formula to calculate the amount of benefit to a lot resulting from an improvement project might be: BENEFIT = (FRONTAGE FEET OF LOT) x (estimated BENEFIT per foot). Such a simple formula could be used to determine benefit, but to get a number or amount of benefit out of the formula, we must supply a number for benefit per foot. If the commission starts with the total project cost and the total area of all lots in the improvement district, the formula would cancel out to a simple cost allocation. The commission can use this formula to determine that a lot with 150 front feet benefits twice as much as a lot with 75 front feet. But until it determines how many dollars per front foot a lot will benefit, it cannot arrive at an amount that either lot is especially benefitted.

[¶33] If, as the majority concluded in *Holter*, it sufficed to specially assess only part of a project, *Holter*, 2020 ND 202, ¶ 21, the "not exceed the benefits" language would be superfluous. To illustrate with an example, suppose the commission determines total cost for a proposed improvement is $1,000,000. If the city resolves to pay $225,000 from general revenue and specially assess the $775,000 remainder, that would constitute assessment of a "part thereof which is to be paid by special assessment." N.D.C.C. § 40-23-07. Suppose, due to the nature of the project, the general benefit to the city as a whole is $500,000, and the special

benefit to the property in the improvement district is $500,000. If the hypothetical district consists of ten similarly situated lots fronting on the improvement and benefitting equally, and each lot benefits in proportion to its frontage, then each lot receives $50,000 in special benefit and would be assessed $77,500 as its "just proportion" of the amount specially assessed. In this hypothetical, a formula is used to determine both special benefit and just proportion of assessed cost. It is clear that the "not exceeding the benefits" requirement would be violated here because applying the special benefit per lot as a "cap" or "maximum" indicates that the lots may not be assessed more than the $50,000 per lot special benefit. This becomes apparent only if the determination of special benefit, here, $500,000 for the district or $50,000 per lot, is determined as the commission's exercise of judgment independent of the project costs. The city or its commission must make two judgments: 1) does the total of the present and likely future benefits resulting from a project exceed the total cost of the project; and 2) what portion of the benefits of the project are received by the city at large or the general public and what portion are special benefits to the property in the district.

E

[¶34] The applicable portion of the City policy applied by the commission states:

> The determination of benefits is the jurisdiction of the Special Assessment Commission.
> . . . .
> A common method of distributing benefits often used by the Commission is to assign half of the benefit of a street or utility to properties on each side of the street or utility. Thereafter, the assignment of benefits is further distributed among the properties on each side.
> . . . .
> Typical benefits are based on effective front footage with 1.0 for frontage, 1/3 for sideage, and variable for rearage (if utilized). Square footage may be used if distribution by effective front footage results in an unbalanced distribution, such as odd shaped commercial lots.
>
> Each property receives a "frontage" benefit for the street paralleling the front of the lot and a "sideage" benefit for the nearest street

14

paralleling the side of the lot. Properties that "side" near a classified street are given a sideage from their nearest local street in lieu of from the classified street.

[¶35] Here, the commission determined the benefit in accordance with the City's policies, finding:

> 9. Benefits received from the project are for access, both for property and fire protection, dust suppression, pedestrian accommodations and provides some drainage control and to provide lighting for pedestrian safety.
> 10. That the Commission has received no comments or objections with respect to the special assessments. . . .
> . . . .
> 12. That the special assessments levied against the property described in attachment A [the Benefit and Assessment chart] are made in accordance with the city's standardized policies and formulas utilizing square footage & frontage assessments.

[¶36] Senske's argument emphasizes the lack of evidence in the record that a benefit analysis was completed. The record contains only the Benefit and Assessment chart. The City argues the Benefit and Assessment chart is sufficient to show it complied with the statute. The commission tersely determined that Senske's properties benefited from the project, and approved the chart listing each parcel's property number, legal description, units, benefit and assessment. Senske did not provide a specific argument on the method the commission should have used to determine the benefit. That is not his role, nor is it the role of this Court. "Where the record is silent as to how benefit was determined, [1] we presume the determination of benefit is consistent with applicable ordinance and policy and [2] the resulting assessment is valid, and Senske has the burden to demonstrate the determination of benefit did not comply with N.D.C.C. § 40-23-07." *Senske I*, 2023 ND 55, ¶ 16.

[¶37] Senske met his burden to show the determination of benefit did not comply with N.D.C.C. § 40-23-07. *Northern Pac. Ry Co.*, 73 N.W.2d at 351. Unlike in *Senske I*, the record here shows Senske repeatedly argued to the city council that the statute required the special assessment commission to determine an amount of benefit based on independent judgment and evidence, and not simply

15

make a cost allocation. After arguing for an independent determination of benefit to be applied as a limit under the statute, the City conceded it had conducted a cost allocation rather than an independent determination of benefit. One council member asked: "Don't we always special assess based upon ... the financial cost of the project per square foot? That's the way we do it, that's the way we've always done it? Correct?" The City Attorney responded, "I believe that's correct." That acknowledgment of applying a straight cost allocation without regard to benefit sets this case apart from our cases prior to *Holter*.

[¶38] Before *Holter*, our special assessment decisions rejected appeals asking us to reweigh or reconsider evidence on which the special assessment commission made its finding of benefits. *See, e.g., Bateman*, 2008 ND 72, ¶ 24; *Haman*, 418 N.W.2d at 607; *Soo Line R.R. Co.*, 172 N.W.2d at 79-82. In *Holter*, after twice being asked to make findings on benefit, the commission simply stated its bottom line finding that the policy was applied to decide the "benefits and costs" to each parcel in the amount of $15,928.40. 2020 ND 202, ¶ 6.

[¶39] Here, like in *Northern Pac. Ry. Co. v. City of Grand Forks*, the City presented nothing but a conclusory statement: "There is only the statement the benefits exceeded the assessment." 73 N.W.2d at 352. In *Northern Pacific*, this Court reversed the district court's dismissal of an action to enjoin special assessments for a parking lot. *Id.* at 350. The district court heard testimony from the chairman of the special assessment commission about how benefits were determined "upon a front footage basis . . . without regard to its location, character, present use or adaptability for future use." *Id.* at 351-52. We explained: "At what rate per front foot benefits were determined is not shown by the record." *Id*. at 352. Because the record revealed only the application of a front footage formula and nothing to show how the amount per front foot was determined, we "presumed from the record that the amount necessary to levy against each front foot in order to raise the amount of the cost of the parking lot was first computed and that the benefits were thereafter determined at a slightly greater sum per front foot." *Id.* at 352. Because the statute requires apportionment according to benefits, "the front footage method is only acceptable when it achieves that result." *Id.*

16

[¶40] It bears emphasis that neither N.D.C.C. § 28-34-01 nor § 40-23-07 requires the commission to make detailed findings of fact. Section 40-23-07 requires the commission to exercise independent judgment in estimating present and future benefit based on evidence and personal knowledge. Here, Senske must show that the determinations made by the commission are arbitrary and capricious. The City's conceded cost allocation incorrectly applies the law by determining benefits dependent on costs and is thus arbitrary, capricious, and unreasonable. *Grand Prairie Agric.*, 2021 ND 29, ¶ 6.

IV

[¶41] We have considered the remaining arguments raised and conclude they are either unnecessary to the decision or are without merit.

[¶42] We reverse the order of the district court and remand to the City for a determination of special benefit to Senske's lots independent of the cost of the project and application of that special benefit as a limit on assessments to each of Senske's lots.

[¶43] Jon J. Jensen, C.J.
Jerod E. Tufte
Douglas A. Bahr

**McEvers, Justice, concurring in part and dissenting.**

[¶44] I agree with section II of the majority concluding the district court did not abuse its discretion denying Senske's motion to exclude the Benefit and Assessment chart from the record. Majority, at ¶¶ 9-13. I respectfully disagree with the majority that the City's determination of benefits was arbitrary, capricious, or unreasonable. I would affirm.

[¶45] Regarding section III, I agree with the majority that Senske argues there was no analysis done and no benefit found under N.D.C.C. § 40-23-07. Majority, at ¶¶ 6, 14. I also generally agree with subsections III(A) and (B) setting forth the scope of this Court's review and the governing authority for determining special

assessments. Majority, at ¶¶ 15-20. My disagreement lies in the majority's view of Senske's arguments and the majority's statutory analysis.

[¶46] In my view, Senske's argument fails on both points. There was a determination of benefit determined after considering the City's policies and considering this specific project and input from the public. Senske repeatedly argues the wrong chapters of law and ignores the appropriate standard of review. Senske argues, "When weighing factual findings against the evidence, the Court considers whether factual conclusions 'are reasonably supported by the greater weight of the evidence.'" Our scope of review in an appeal from a decision of a local governing body is the same as the district court and is very limited. *Senske Rentals, LLC v. City of Grand Forks*, 2023 ND 55, ¶ 10, 988 N.W.2d 598 ("*Senske I*") (relying on *Tibert v. City of Minto*, 2006 ND 189, ¶ 8, 720 N.W.2d 921). Our review of challenges to special assessments is limited in part because of the separation of powers doctrine:

> The special assessment commission is in essence a legislative tribunal created by legislative authority to (1) determine the benefits accruing to the several tracts of land in an improvement district by reason of the construction of an improvement and (2) assess the costs and expenses thereof against each tract in proportion to the benefit received. Accordingly, judicial review is limited to assuring that local taxing authorities do not act arbitrarily, capriciously, or unreasonably. Courts are not to act as a super grievance board, and we do not try special assessment cases anew or reweigh the evidence. Rather, we begin with the presumption that assessments for local improvements are valid, and the burden is on the party challenging the validity of the assessments to demonstrate they are invalid.

*Id*. (cleaned up); *see also Soo Line R.R. Co.*, 172 N.W.2d 74, 75 (N.D. 1969) (stating "the assessment of benefits made by the special assessment commission and confirmed by the city commission for street, curb, and gutter improvements which involve judgment and discretion will not be reviewed by the court, and it is not the province of the court to substitute its judgment for that of the commission making such decision, but merely to determine whether the commission was within its jurisdiction, was not mistaken as to the applicable

18

law, and did not act arbitrarily, oppressively, or unreasonably, and to determine whether there is substantial evidence to support or justify the determination").

[¶47] Chapter 40-23, N.D.C.C., governs assessments of benefits. As provided in N.D.C.C. § 40-23-05, when a special assessment is used to pay for an improvement, the municipality must estimate the total cost and "the governing body may direct *assessments to be levied for the payment of all or any part of such cost* . . . ." (Emphasis added.) *See also Hector v. City of Fargo,* 2012 ND 80, ¶ 37, 815 N.W.2d 240 (noting a city may assess for all or any part of the total cost of an improvement). Under N.D.C.C. § 40-23-05, the city auditor is required to notify the chairman of the special assessment commission of the total cost, so far as it has been ascertained, and the commission must consider the cost in determining the special assessment.

[¶48] More specifically, determinations of special assessments and what properties are especially benefited by an improvement are addressed under N.D.C.C. § 40-23-07, stating in relevant part:

> Whenever the commission makes any special assessment, the commission shall determine the particular lots and parcels of land which, in the opinion of the commission, will be especially benefited by the construction of the work for which the assessment is to be made. The commission shall determine the amount in which each of the lots and parcels of land will be especially benefited by the construction of the work for which such special assessment is to be made, and shall assess against each of such lots and parcels of land such sum, not exceeding the benefits, as is necessary to pay its just proportion of the total cost of such work, or of the part thereof which is to be paid by special assessment, including all expenses incurred in making such assessment and publishing necessary notices with reference thereto and the per diem of the commission. However, as an alternative to the procedure provided in this section, the special assessment commission may, in its discretion, determine and allocate the cost of special assessments in accordance with the method provided for in chapter 40-23.1.

[¶49] The following three requirements must be satisfied for a special assessment to comply with N.D.C.C. § 40-23-07:

> The special benefit accruing to each lot or parcel of land from the improvement must be determined. The special assessment levied against each lot must be limited to its just proportion of the total cost of the improvement. The assessment against any lot or parcel of land must not exceed the benefit which has been determined to have accrued thereto.

*Senske I*, 2023 ND 55, ¶ 12 (quoting *Bateman v. City of Grand Forks*, 2008 ND 72, ¶ 11, 747 N.W.2d 117). "This Court looks at whether, on its face, the legislative act was arbitrary, capricious, or legally unreasonable." *Id.* at ¶ 13 (citing *Holter v. City of Mandan*, 2020 ND 202, ¶ 12, 948 N.W.2d 858). The majority views the statutory requirements as a step-by-step process, with each step to be completed independently. Majority, at ¶ 21. I view the requirements of N.D.C.C. § 40-23-07 to be considered in their totality and not in a step-by-step process. The statute must also be considered in conjunction with N.D.C.C. § 40-23-05. While a city may have a policy that determines the benefits without considering the actual cost of the project, N.D.C.C. § 40-23-07 sets forth no particular requirement for determining the amount by which a property is especially benefited. *See Hector*, 2012 ND 80, ¶ 5 (discussing a method by which the City of Fargo determined the amount a property benefits by using a formula without considering the "actual cost" of the improvement).

[¶50] A special assessment commission has discretion in determining the method of setting a dollar amount of a special benefit, and benefits may be conferred "by the valuation, front foot, area, or any other method." *Cloverdale Foods Co. v. City of Mandan,* 364 N.W.2d 56, 61 (N.D. 1985). For example, in a case involving a waste-water lagoon facility improvement, the special assessment commission may determine the benefit based on the quantity of water consumption of the user. *Id.* at 62. I see nothing in N.D.C.C. § 40-23-07 that precludes a situation where the cost of the improvement and the benefit determined may not be the same. The special assessment must only be limited to the property's just proportion of the total cost and may not exceed the benefit.

[¶51] Using cost as part of the formula to determine how much a property is especially benefited is a method consistent with the alternative means for specially assessing properties allowed for under N.D.C.C. § 40-23-07, which is to

apply the method provided in chapter 40-23.1. The alternate method to determine special assessment uses specific assessment rates per square foot. N.D.C.C. § 40-23.1-03. Under this section, the special benefits are determined by applying a formula to the total costs. N.D.C.C. § 40-23.1-03(1)(a); -03(2)(b). Both methods provide a formula which requires a sum to be divided into the total cost of the improvement. N.D.C.C. § 40-23.1-03(1)(b); -03(2)(b). The second method specifically states the assessment rate for each assessable unit of frontage "shall be determined by dividing that portion of the total cost of the improvement *representing special benefits* by the aggregate sum of all assessable units." N.D.C.C. § 40-23.1-03(2)(b) (emphasis added). There is no legislative ban on determining the amount of special benefit based on the cost of the improvement.

[¶52] When reviewing the determination of benefits, we have stated:

> In summary, a reviewing court may not reverse a local governing body's action simply because it finds some of the material considered more convincing. A reviewing court can only reverse when there is such an absence of evidence or reason as to amount to arbitrary, capricious, or unreasonable action. As such, a municipality has broad discretion to determine benefits and apportion assessments and costs to properties within an improvement district. There is no exact formula for quantifying benefits. An assessment may be apportioned according to frontage, area, value of, or estimated benefits to, the property assessed, or according to districts or zones, or on any other reasonable basis that is fair, just, and equitable.

*Senske I*, 2023 ND 55, ¶ 14 (cleaned up).

[¶53] Here, the commission determined the special benefit in accordance with the City's policies, as reflected in its September 29, 2022 findings:

> 1. That the Special Assessment Commission has jurisdiction and is exercising its judgment and discretion in the determination and certification of assessments and benefits for Project #7539, Special Assessment Improvement District #737.
>
> . . . .

21

6. That the Special Assessment Commission is familiar with the area within the improvement district and is familiar with the project.

. . . .

8. That the Special Assessment Commission for the City of Grand Forks, North Dakota specifically finds that all properties within Project … are especially benefited from the project and the amounts of the assessments are set forth in attachment A.

9. <u>Benefits received from the project are for access, both for property and fire protection, dust suppression, pedestrian accommodations and provides some drainage control and to provide lighting for pedestrian safety.</u>

10. That the Commission has received no comments or objections with respect to the special assessments. The Commission considered all public comments, whether oral or written, concerning the project, the manner of assessments, the benefits therefrom, and objections thereto at the Special Assessment Commission Hearings on <u>September 29, 2022</u>.

11. That the Special Assessment Commission finds that the project provides primary benefits to property located within Special Assessment Improvement District #<u>737</u>.

12. That the special assessments levied against the property described in attachment A are made in accordance with the city's standardized policies and formulas utilizing <u>square footage & frontage</u> assessments.

[¶54] Much of Senske's argument on appeal hinges on the lack of evidence in the record that a benefit analysis was completed. First, the term "benefit analysis" is not mentioned in N.D.C.C. § 40-23-07, and I have been unable to find any authority that a "benefit analysis" must be completed. The special assessment commission is required to determine the amount by which properties are especially benefited. How that determination is made is left to the discretion of the commission.

22

[¶55] Second, if there is a lack of evidence in the record, Senske bears at least part of the blame. Despite being given information on estimated costs and an opportunity to object to the project, Senske did not protest the project until after the notice of the special assessment was provided to benefited property owners. As noted by the majority, the district court did not abuse its discretion including the Benefit and Assessment chart as part of the record. Majority, at ¶ 13. The commission determined Senske's properties especially benefited from the project, and included an amount for each affected property's benefit. Senske has not argued his properties were not benefited by the project, only that he disagrees with the dollar amount of the benefit attributed. According to the minutes of the special assessment hearing held on September 29, 2022, "Senske shared that he is not happy with how the project went and thinks the properties are being assessed excessively. Senske expressed that he thinks excess costs are due to poor planning of the project . . . ." Senske did not provide a specific argument that the benefit determined was in error, nor did he provide any alternative method the commission should have used to determine the benefit. Rather, he has conceded that the commission likely followed the City's policies for determining the benefit. "Where the record is silent as to how benefit was determined, we presume the determination of benefit is consistent with applicable ordinance and policy and the resulting assessment is valid, and Senske has the burden to demonstrate the determination of benefit did not comply with N.D.C.C. § 40-23-07." *Senske I*, 2023 ND 55, ¶ 16.

[¶56] I see very little difference in this case and *Senske I*. The majority uses this case as a vehicle to overturn *Holter*, 2020 ND 202, in which Justice Tufte, joined by Chief Justice Jensen, dissented. Majority, at ¶¶ 27-29. While acknowledging the need for stability in the law, the majority justifies overturning *Holter* because we should correct an error when new arguments are made or different facts in the record lead us to conclude a prior interpretation is incorrect. Majority, at ¶ 27. While I agree with the premise, I disagree that Senske made any new legal argument or provided any new facts that would bring about a different result than that reached in *Senske I.*

[¶57] Here, as in *Senske I*, Senske relies on Justice Tufte's dissent in *Holter* to argue the calculation used by the commission to determine the benefit did not

23

satisfy N.D.C.C. § 40-23-07. Besides the dissent in *Holter*, the only case Senske cites involving North Dakota caselaw on special assessments is *Bateman*, 2008 ND 72. The only new legal argument Senske makes here is that this Court should reverse because N.D.C.C. § 28-32-46(5) requires the commission to make detailed findings of fact that are supported by the preponderance of the evidence. This argument fails because N.D.C.C. § 28-32-46(5) does not apply to decisions of local governing bodies. Rather, Senske must show that the determinations made by the commission are arbitrary, capricious, or unreasonable.

[¶58] As in *Senske I,* Senske's properties were assessed under the City's Special Assessment Policy. 2023 ND 55, ¶¶ 15-17. In *Senkse I,* Senske argued the City's method of deriving the benefit was in error stating, the "method employed by the Special Assessment Commission is to take the cost of construction provided by the City Engineer and divide that amount by the square foot of the property and assess it by 100% or 50% depending on the lot frontage or property type." Here, the only new factual argument made is that there is a lack of evidence in the record that a benefit analysis was performed, an argument which could only be agreed with if this Court agreed the benefit analysis should be stricken from the record. Here and in *Senske I*[1], the benefit was determined based on the cost of the project, using the cost of construction in accordance with the square footage of the property or according to lot frontage or lot sideage. The assessment was determined by reducing the cost by a percentage (20%) for the type of project. After issues were raised about the cost of the project, as noted by the district court, the record reflects the project's unique circumstances were considered and adjustments were made to reduce the cost share of the assessment, resulting in apportioning approximately 50% to the City and 50% to the benefited property owners.

[¶59] According to the majority, Senske met his burden to show the determination of the benefit did not comply with N.D.C.C. § 40-23-07 based on the factual record. Majority, at ¶ 37. The majority states:

---

[1] In *Senske I,* 2023 ND 55, ¶ 2, the standard percentage of the City's share of a pond project was 15%, but after considering the circumstances, the City's share of the project was increased to 50%.

24

Unlike in *Senske I*, the record here shows Senske repeatedly argued to the city council that the statute required the special assessment commission to determine an amount of benefit based on independent judgment and evidence, and not simply make a cost allocation. After arguing for an independent determination of benefit be applied as a limit under the statute, the City conceded it had conducted a cost allocation rather than an independent determination of benefit. One council member asked: "Don't we always assess based upon … the financial cost of the project per square foot? That's the way we do it, that's the way we've always done it? Correct?" The City Attorney responded, "I believe that's correct." That acknowledgement of applying a straight cost allocation without regard to benefits sets this case apart from our cases prior to *Holter.*

Majority, at ¶ 37. I agree with the majority that a council member and the City Attorney made these statements. However, I disagree that this Court should treat the statements of a council member or the City Attorney as concessions that there was some error in applying N.D.C.C. § 40-23-07. While N.D.C.C. § 40-23-07 requires the special assessment commission to use independent judgment or discretion, it does not preclude the use of a policy or a formula to determine how each property is especially benefited. The discretion may be applied in determining the method of setting a dollar amount for the benefit or in the determination of the assessment. Based on the evidence presented, that is exactly what was done. The commission used a policy as the method to determine the benefit. Based on city policy and the input from property owners, the amount of the assessment was reduced by an additional percentage based on the particular concerns for this project.

[¶60] The majority interprets N.D.C.C. § 40-23-07 to require the commission to exercise its judgment independent of the project's costs, stating:

The city or its commission must make two judgments: 1) does the total of the present and likely future benefits resulting from a project exceed the total cost of the project; and 2) what portion of the benefits of the project are received by the city at large or the general public and what portion are the special benefits to the property in the district.

25

Majority, at ¶ 33. Respectfully, the majority is engrafting requirements on special assessment commissions that are not contained in N.D.C.C. § 40-23-07.

[¶61] The discretion granted to a special assessment commission in determining benefits is broad:

> Included within the broad discretion accorded to the special assessment commission is the discretion to choose the method used to determine *benefits* and apportion costs to individual properties within the improvement district . . . . Where no rule of apportionment is prescribed by statute or charter, the municipality may adopt any mode that would be fair and legal and such as would secure an assessment in proportion to the benefits accruing as nearly as practicable. Absolute equality in not to be expected. . . . The process of quantifying benefits accruing to each lot inevitably rests on the judgment and discretion of the special assessment commission. There simply is no precise formula for quantifying benefits. The statutory directive is just proportion, not absolute uniformity.

*Serenko v. City of Wilton*, 1999 ND 88, ¶¶ 21-22, 593 N.W.2d 368 (cleaned up) (emphasis added) (upholding assessment to apportion costs based upon square footage of the property where that method was determined by the special assessment commission to best approximate the benefits of a street repair project to the lots in the improvement district); *Holter*, 2020 ND 202, ¶¶ 18-23 (indicating "[t]he special assessment commission determined the benefits under the City's policy, and the assessments do not exceed the benefits."); *Senske I*, 2023 ND 55, ¶ 17 ("[W]e have routinely approved the use of formulas such as front footage area or value to determine the benefits assessed to properties.").

[¶62] As in *Senske I,* I would conclude Senske has not met its burden to show the assessments are invalid or that the commission failed to comply with the statutory requirements under N.D.C.C. § 40-23-07.

[¶63] As noted by the majority, the commission must have some basis for its determination of benefits. Majority, at ¶ 24 (relying on *Northern Pac. Ry. Co. v. City of Grand Forks,* 73 N.W.2d 348, 352 (N.D. 1955)). *Northern Pacific* does not stand for the proposition that formulas cannot be used to determine the amount

26

a property specially benefits, but rather, this Court noted: "Where, as in this state, special assessments must be apportioned according to benefits the foot frontage method is only acceptable when it achieves that result. It can only be used in cases where benefits conferred upon the assessed property are equal and uniform." 73 N.W.2d at 352. In *Northern Pacific*, this Court concluded that use of the foot frontage method of assessment of a parking lot resulted in the railway being assessed more than its proportionate share of the cost of the improvement. *Id.* at 354.

[¶64] I agree with the majority that the amount a property is especially benefited must be denominated in dollars. Majority, at ¶ 25. I disagree with the majority that the "amount" of special benefit to a property is necessarily related to but distinct from its "just proportion" of the costs. *Id*. It may be, depending on the method chosen for determining a dollar amount on the benefit to a property, but putting a dollar amount on property especially benefited in some instances can only be calculated using a proportionate share of the total cost. That does not mean the property owner is necessarily stuck paying the entire amount—that is what the special assessment commission is tasked with, determining a fair share of the cost depending on the type and "amount" of benefit received. As used in N.D.C.C. § 40-23-07, the term "amount" means more than just a dollar amount. *See Black's Law Dictionary* (6th ed. 1990) (defining amount as "[t]he whole effect, substance, quantity, import, result, or significance"). Putting a dollar amount on the benefits received from a project such as the one at hand is difficult to quantify because some of the benefits are intangible. How do you place a dollar amount on the value of improved access to a property and for improved fire protection, dust suppression, pedestrian accommodations, drainage control, and lighting for pedestrian safety?

[¶65] Senske agreed that he wanted the project done but complained about the cost to him. It is clear that his property that abuts the improvements will be especially benefited (he benefits at a greater amount than the general public). Paving the roads improves access to his business and allows for quicker response times for fire suppression, and installing drainage and lighting protects his property. The majority is unrealistic in suggesting a municipality determine benefit, especially when benefits are intangible, without estimating how much

27

the project will cost. Section 40-23-05, N.D.C.C., specifically requires, when a special assessment is required for an improvement, the municipality must estimate the total cost and forward the information to the special assessment commission. The statute also allows the governing body to direct assessments to be levied for the payment of all or any part of such cost. *Id.*

[¶66] The legislature has specifically rejected the notion that special benefit must be one that increases the market value of the parcel of land being assessed due to an improvement. *See* failed H.B. 1307, 66th Legis. Assemb. (N.D. 2019). Pulling some number out of the air to put a dollar value on how a property is especially benefited without first considering the cost of the project would certainly be viewed as arbitrary, capricious, or legally unreasonable. Rather, the cost of a project may be the starting point, and then the amount to be specially assessed as a proportional share to those properties especially benefiting from the project can be determined as compared to other taxpayers living in the City.

[¶67] After determining the total cost of $4.177 million, the commission applied its policy to determine the amount especially benefited to Senske by calculating and assigning the proportion of benefit based on different percentages, depending on whether the property was on a local street or a classified street. Local streets were assessed using 100% (meaning approximately 50% of the cost) of the benefit for frontage and 33% benefit for sideage. Classified streets were assessed using 100% (meaning 80% of the cost) of the benefit based on a square footage of the first 140 feet and 25% benefit for square footage beyond the first 140 feet. The commission found, "All costs for this project will be special assessed to the benefitting properties except for an 80% City share for classified streets (27th & 24th Ave N.) and a 40% City share for local streets (20th & 26th Aves N and N 43rd & 44th Sts.)." The additional 40% cost sharing shows the special assessment commission applied its discretion, as this reduction was the result of public input meetings for the purpose of making the project more financially viable for property owners, and the result of the additional portion of the cost being taken on by the City resulted in and approximate 50/50 cost share.

[¶68] The majority takes issue with the use of formulas to determine benefit because "[t]hese 'formulas' can only yield a relative benefit not an absolute

benefit." Majority, at ¶ 26. The premise may be correct, but it is irrelevant. There is no requirement under N.D.C.C. § 40-23-07 to calculate an "absolute" benefit. That may be impossible. The absolute benefit to each property owner may vary depending on how they use their property. For example, a business with many customers accessing their property will receive a higher absolute benefit than a business that serves their customers offsite. A property owner that receives timely fire suppression will receive a higher absolute benefit than a property owner who has no fire to suppress. Yet, all property owners receive the opportunity to have a fire suppressed in a timely manner should it occur.

[¶69] The majority adopts a formula to calculate the amount of benefit to a lot resulting from an improvement project: BENEFIT = (FRONTAGE FEET OF LOT) x (estimated BENEFIT per foot). Majority, at ¶ 32. No such formula is required by N.D.C.C. § 40-23-07. Would the result have been different if the City first used 80% of the cost of the project to estimate the special benefit to properties in the special assessment district? My answer is no. Whether the City's policy was to only assess 80% of the cost or to cap benefits at 80% of the cost, either method satisfies the portion of N.D.C.C. § 40-23-07 that the benefit cannot exceed the cost. The special assessment commission considered the circumstances of these property owners and reduced the percentage to the assessments even further. This can hardly be considered arbitrary, capricious, or unreasonable. In my view, the special assessment commission may consider the total cost of the project when determining the dollar value of special benefits.

[¶70] Because the majority reverses, it deemed it unnecessary to address the discovery issue raised by Senske. Since I would affirm, I will answer the question. Senske argues the district court erred in denying discovery when the denied discovery was necessary to support an independent claim alleging an unconstitutional taking, which the court later dismissed. Because it is unclear whether this argument is distinct from the arguments regarding supplementation of the record, I address the discovery argument as part of that argument.

[¶71] Senske's arguments to the district court to supplement the record included the certified record on appeal must have sufficient evidence upon which a court

could determine whether a special assessment represents an unconstitutional taking. Senske further argued the city council was required to make a record of all testimony, written statements, documents, exhibits, and other evidence presented under N.D.C.C. §28-32-36, and was required under N.D.C.C. § 28-32-44(4)(h), to produce a transcript of the hearing. Senske did not argue to the court this taking claim was an independent action as a separate legal reason to allow discovery. The court applied N.D.C.C. ch. 28-32 to the motions to supplement the record. The correct statute to apply is N.D.C.C. § 28-34-01 when considering whether to supplement the record on appeal from a local governing body.

[¶72] As noted in *Grand Forks Housing Authorities v. Grand Forks Board of County Commissioners*,

> Section 28-34-01(3), N.D.C.C., allows a court to order additional evidence be taken, heard, and considered by the local governing body if the court determines that such additional evidence is material and that there are reasonable grounds for the failure to adduce such evidence in the hearing or proceeding had before the local governing body. When a statute provides that a court may order additional evidence be heard, the decision lies within the discretion of the court. Therefore, we review the district court's denial of the Housing Authority's motion to remand for an abuse of discretion. A district court abuses its discretion when it acts arbitrarily, capriciously, or unreasonably or when it misinterprets or misapplies the law.

2010 ND 245, ¶ 11, 793 N.W.2d 168 (cleaned up); *see also Grand Forks Homes, Inc. v. Grand Forks Bd. of Cnty. Comm'rs*, 2011 ND 50, ¶ 8, 795 N.W.2d 381 (applying the standard to N.D.C.C. § 28-34-01(3)).

[¶73] Under N.D.C.C. § 28-34-01(3), if the district court determines additional evidence is material and there are reasonable grounds for the failure to adduce such evidence in the hearing or proceeding before the local governing body, the court may order that such additional evidence be taken, heard, and considered by the local governing body. The district court found Senske's motion to supplement the record with testimony, documents, and correspondence between committee members was untimely and Senske provided no reasonable grounds for the failure to offer the evidence in the proceeding below. The court also found

30

the additional evidence was not relevant or material and that Senske admitted the additional evidence would be largely duplicative of the record prepared for the appeal. The court denied Senske's request to supplement the record with documents or testimony, with one exception: the city council hearing recording.

[¶74] It was within the district court's discretion whether or not to allow amendments or additions to the record. The court's findings that the documents were not relevant or material, that Senske's motion was untimely and provided no grounds for delay, and that the additional evidence was duplicative are supported by the record. The court granted Senske's request to supplement the record with the recording of the city council's hearing. Notwithstanding the court's application of the wrong statute, applying the court's findings under the correct statute, I would conclude the court did not abuse its discretion.

[¶75] Addressing more specifically Senske's argument that the district court erred in denying it necessary discovery, I begin with the standard of review:

> A district court has broad discretion regarding the scope of discovery, and the court's discovery decisions will not be reversed on appeal unless the court abuses its discretion. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. An abuse of discretion by the district court is never assumed, and the burden is on the party seeking relief affirmatively to establish it. The party seeking relief must show that the court positively abused its discretion and not that the court made a "poor" decision.

*Franciere v. City of Mandan*, 2020 ND 143, ¶ 18, 945 N.W.2d 251 (cleaned up).

[¶76] Senske's argument that "[b]ecause Senske was denied discovery, the court later dismissed the cause of action because it was based on 'bare assertions' instead of evidence" misconstrues the district court's holding. Senske argued to the district court that the previous five years of assessments on its properties should be considered in determining whether an unconstitutional taking had occurred. The court held:

Senske has provided no legal authority for the proposition that a "takings" analysis must include any and all prior special assessments separate and distinct from the one specifically before the Court. Further, much of Senske's legal argument on this issue is based on bare assertions.

[¶77] When a party fails to cite to any relevant authority it is not error for a reviewing court to consider the argument waived. *See Krueger v. Grand Forks Cnty.*, 2014 ND 170, ¶ 30, 852 N.W.2d 354 (agreeing with the district court that a party's failure to make an argument that is adequately articulated, supported, and briefed will not be considered).

[¶78] Senske cited no authority to the district court that it is entitled to discovery beyond the statutory provisions permitting amendments or additions to complete the record in an appeal from a local governing body, and no authority to support a holding that prior special assessments should be part of the record. I would conclude the court did not abuse its discretion in denying additional discovery when the request was not adequately supported.

[¶79] I would affirm, concluding the City's determination of benefits was not arbitrary, capricious, or unreasonable.

[¶80] Daniel J. Crothers
Lisa Fair McEvers